Alvin James MARTIN; Susan B. Martin; Thomas G. Williams; and Ollace M. Williams, a/k/a C.W. Williams, a/k/a Otis Williams, Appellees and Cross–Appellants,

v.

PRINCIPAL CASUALTY INSURANCE COMPANY, an Iowa corporation; Budget Rent–a–Car Corporation, a Delaware corporation; and Sears, Roebuck & Company, d/b/a Sears Rent–a–Car, a New York corporation, Appellants and Cross–Appellees.

No. 90CA1492.

Colorado Court of Appeals, Div. I.

Dec. 5, 1991.

Rehearing Denied March 26, 1992.

Certiorari Granted Sept. 14, 1992.

William A. Richardson, Denver, Banta, Hoyt, Greene & Everall, P.C., James E. Gigax, Bernard W. Messer, Englewood, for appellees and cross-appellants.

Burg & Eldredge, P.C., Scott J. Eldredge, Denver, for appellants and cross-appellees.

Opinion by Judge SMITH.

The defendant, Budget Rent–a–Car (Budget) appeals the summary judgment entered in favor of plaintiffs, Alvin and Susan B. Martin and Thomas G. and Ollace M. Williams, relative to its obligations to plaintiffs under the Colorado Auto Accident Reparation Act (No–Fault Act), § 10–4–701 C.R.S., et seq. (1987 Repl.Vol. 4A). Budget also appeals from a final judgment entered following a jury trial in which verdicts were returned against it on plaintiffs' claims for breach of contract and bad faith and from an order awarding attorney fees to plaintiffs' former counsel. Plaintiffs cross-appeal the trial court's ruling dismissing their claim for exemplary damages and the trial court's post-trial remittitur order reducing their bad faith award and denying their subsequent claim for attorney fees. We affirm each of the judgments except the trial court's post-trial orders on the issue of attorney fees.

The plaintiffs were traveling in Texas when the van they had rented from Budget in Colorado blew a tire. In the resulting crash of the vehicle all plaintiffs sustained injuries and incurred medical bills which they submitted to Budget, a self-insured no-fault insurance carrier under § 10–4–716, C.R.S. (1987 Repl.Vol. 4A).

Budget consistently refused payment of any medical bills, and plaintiffs filed this lawsuit against Budget and Principal Casualty Insurance Co. (Principal), the insurer of the driver of the van at the time of the accident. Plaintiffs sought recovery for personal injury protection (PIP) benefits, treble damages for PIP non-payment, and exemplary damages. Plaintiffs also sought damages for bad faith breach of insurance contract.

Principal moved for summary judgment, arguing that under § 10–4–701, et seq. C.R.S. (1987 Repl.Vol. 4A) it was not the responsible no-fault carrier. In June 1989, the trial court granted Principal's motion, and it is not presently a party to this lawsuit.

Also in June 1989, plaintiffs filed a motion for summary judgment on the issue of Budget's liability under the No–Fault Act. Budget filed a cross-motion for summary judgment. In August, the trial court granted summary judgment in favor of plaintiffs, holding that Budget was the responsible no-fault carrier and was required to provide plaintiffs' PIP coverage in accordance with § 10–4–706 and 10–4–707, C.R.S. (1987 Repl.Vol. 4A).

Subsequently, numerous meetings were held and communications exchanged between plaintiffs and Budget. Plaintiffs, however, did not receive any payment from

Budget and, in April 1990, a jury trial was held.

The jury returned verdicts in favor of plaintiffs and awarded plaintiffs damages for unpaid benefits of $12,491.53 and treble damages $33,934.59. Finally, it awarded plaintiffs $1,460,000 on their claims for bad faith breach of the insurance contract. This award was reduced to $1,000,000 pursuant to § 13–21–102.5, C.R.S. (1991 Cum. Supp.).

Post-trial, Budget filed a motion for a new trial/judgment notwithstanding the verdict. Plaintiffs filed a motion for costs, interest, and attorney fees. In response to these motions, the trial court issued an order in which it found the verdict on the claim of bad faith to be excessive and issued an order of remittitur reducing this award to $294,000. Additionally, the trial court denied plaintiffs' motion for attorney fees.

### I.

Budget initially contends that the trial court erred in determining that it was obligated, under the No–Fault Act, to provide plaintiffs' PIP benefits. We disagree.

### A.

First, Budget argues, in essence, that the trial court erred in ruling that § 10–4–711(3), C.R.S. (1987 Repl.Vol. 4A) rather than § 10–4–707(1)(c), C.R.S. (1987 Repl. Vol. 4A) governed the resolution of the plaintiffs' PIP claim. We disagree.

█ Since both sections of the statute are integral to, and deal with, the extent of coverage required by the No–Fault Act, they are "in pari materia." They should be construed together and reconciled if possible. *Estate of David v. Snelson,* 776 P.2d 813 (Colo.1989); *Lininger v. City of Sheridan,* 648 P.2d 1097 (Colo.App.1982).

Section 10–4–707(1), C.R.S. (1987 Repl. Vol. 4A) describes to whom the coverages provided in § 10–4–106, C.R.S. (1987 Repl. Vol. 4A) shall be applicable. Sections 10–4–707(1)(a) & (b), C.R.S. (1987 Repl.Vol. 4A) deal with "named insureds" and their relatives who are residents in the named insured's household. These sections require that all such persons, collectively defined as "insureds" under § 10–4–703, be covered for any accidental bodily injury resulting from an accident involving any motor vehicle regardless of whether the accident occurs in Colorado. The only exception to this coverage occurs if such "insured" person is operating his or her own vehicle and such vehicle is not insured under the No–Fault Act. The coverage mandated by these sections is personal to the "insureds" and is not dependent upon the involvement of any particular motor vehicle, except as noted, in the injury causing accident.

Section 10–4–707(1)(c), C.R.S. (1987 Repl. Vol. 4A) on the other hand, mandates coverage of authorized occupants of the "described motor vehicle" as well as pedestrians injured in an accident involving such covered vehicle for all accidents occurring in Colorado.

The thrust of Budget's argument is that, although claimants were authorized passengers of a "described motor vehicle," § 10–4–707(1)(c) precludes any PIP recovery because the accident occurred outside of Colorado. Budget bolsters this assertion by arguing that, because § 10–4–707(1)(a) & (b) permit recovery even if the accident occurs outside of Colorado, the language of § 10–4–707(1)(c) clearly demonstrates a legislative intent to preclude any requirement of coverage for authorized occupants of an insured vehicle if the accident occurs outside of Colorado.

█ We disagree with the foregoing rationale based on the entirely different theory of the coverages mandated in § 10–4–707(1)(a) & (b), and that contained in § 10–4–707(1)(c). But, more importantly, we hold that the General Assembly expressly and specifically required that complying policies provide coverage for persons in claimants' position when it enacted § 10–4–711(3), C.R.S. (1987 Repl.Vol. 4A) entitled "Required provision for intrastate and interstate operation." That subsection reads, in part, as follows:

> Notwithstanding any of its other terms and conditions, every complying policy

shall afford coverage at least as extensive as the minimum coverage required by [Colorado law] during such periods of time as the insured motor vehicle is operated in other jurisdictions ... as the statutes, laws, or administrative regulations of such other jurisdictions require with respect to liability, or financial responsibility, and direct benefit or first party coverages for operators, occupants, and persons involved in accidents arising out of use or operation of motor vehicles within such other jurisdictions.

In interpreting these apparently conflicting sections we must attempt to effectuate the intent of the General Assembly. *Danielson v. Castle Meadows, Inc.*, 791 P.2d 1106 (Colo.1990). That body has expressly declared the No–Fault Act's purpose in § 10–4–702, C.R.S. (1987 Repl.Vol. 4A). Foremost in the enumerated list of purposes is "to avoid inadequate compensation to victims of automobile accidents," a purpose construed to embody a legislative intent and policy "to maximize rather than minimize insurance coverage." *Meyer v. State Farm Mutual Automobile Insurance Co.*, 689 P.2d 585 (Colo.1984). *See also Leland v. Traveler's Indemnity Co.*, 712 P.2d 1060 (Colo.App.1985).

Bearing this intent in mind, we interpret § 10–4–711(3) (the extra-territorial provision) as being expressly and specifically directed toward the accomplishment of this legislative intent by its requirement of coverage for authorized occupants, in at least as great an amount as within Colorado, while an insured vehicle is being operated outside of this state. The additional language of this section, although grammatically somewhat confusing, seems to us to require also that a complying policy must, in addition to providing minimum benefits consistent with those that would be awarded in Colorado, also provide such additional coverage as would be sufficient to comply with the laws of the state in which the insured vehicle is being operated.

In interpreting its analogous extra-territorial provision, the New York Court of Appeals noted in *Country–Wide Insurance Co. v. Rodriguez*, 55 N.Y.2d 162, 448 N.Y.S.2d 135, 433 N.E.2d 118 *cert. denied*, 457 U.S. 1118, 102 S.Ct. 2930, 73 L.Ed.2d 1330 (1982):

It ... would be unthinkable to assume that our legislators were not conscious of and concerned with the hazards of the ... occupants of New York automobiles would face when they ventured [outside the state]....

We likewise conclude that it is "unthinkable to assume," particularly in light of our No–Fault Act's express beneficent purpose, that our General Assembly did not intend no-fault coverage to embrace authorized occupants and passengers of Colorado insured vehicles who had the temerity to "venture" beyond the Colorado border.

■ In light of our interpretation of § 10–4–711(3), it becomes clear that the territorial limitation contained in § 10–4–707(1)(c) was not intended to be a preclusion to recovery, but rather was a way of providing for and defining the amount of recovery if the accident occurred in Colorado. This was essential language because, under § 10–4–711(3), if the accident occurred outside of Colorado, the basis of recovery might well be difficult. It would be not less than it would have been had the accident occurred in Colorado but, based on similar no-fault or compulsory insurance laws existing in other states, might be greater.

■ In the event there remains any conflict between the two sections at issue here, we would observe that if there is a conflict between the general and specific provisions of a statute, the specific will prevail. *See* S. Singer, *Sutherland Statutory Construction* § 46.05 (4th ed. 1986). We conclude that, as to the issue of a complying insurer's extra-territorial PIP liability, § 10–4–711 is the more specific statutory provision and thus prevails over § 10–4–707(1)(c).

In sum, we conclude that the trial court properly relied on § 10–4–711(3) in resolving plaintiffs' claim.

**B.**

Next, Budget argues that the trial court misconstrued the provisions of § 10–4–711(3) to require payment of Colorado, rather than Texas, PIP benefits.

Here, the trial court specifically found,

The mischief [of § 10–4–711(3)] is that the coverage required out-of-state is defined both as the minimum required in Colorado and as the law of the other jurisdiction requires. If the two are not exactly the same there is ready confusion as to how to read the statute. This court is of the view that the first construction is appropriate....

As we have indicated above, we agree with the trial court's analysis and conclusion. The statute is, indeed, susceptible to more than one interpretation. However, as we have said, it must be construed in light of the apparent legislative intent and purpose. *Mooney v. Kuiper*, 194 Colo. 477, 573 P.2d 538 (1978).

■ The purpose of the No–Fault Act is to provide accident victims "adequate compensation." Interpreting § 10–4–711(3) to require at least minimum Colorado coverage as to the occupants of a vehicle driven in a foreign jurisdiction, as noted by the trial court, "best serves [this] statutory purpose." Likewise, this interpretation also insures that if the owner of a vehicle registered in Colorado purchases "complying" insurance, such owner will be fully protected in whatever state he or she may drive. This we believe is also a legislatively intended beneficent result.

■ Here, Texas no-fault benefits are substantially less than those required by §§ 10–4–706 and 10–4–707. *See* Tex.Insurance Code art. 5.06–3 (Vernon 1981). Accordingly, the trial court properly ruled that plaintiffs were entitled to the minimum coverages set forth in §§ 10–4–706 and 10–4–707.

**II.**

Budget also contends that the trial court erred in denying its motion for judgment notwithstanding the verdict on plaintiffs' claim of bad faith. We disagree.

Budget argues that there was no evidence presented that its failure to pay plaintiffs' claims was unreasonable, particularly in light of the statutory ambiguity set forth in part I.

■ A judgment notwithstanding the verdict can be entered only if, after reviewing the evidence in the light most favorable to the non-moving party, reasonable people could not reach the same conclusion as the jury. *Smith v. City & County of Denver*, 726 P.2d 1125 (Colo.1986).

■ To recover for bad faith breach of an insurance contract, one must prove that the insurer's conduct, viewed objectively in light of standards of conduct in the industry, was unreasonable and that the insurer either knew that its conduct was unreasonable or recklessly disregarded the fact that its conduct was unreasonable. *Travelers Insurance Co. v. Savio*, 706 P.2d 1258 (Colo.1985).

■ Such tort is grounded in the insurer's duty to the insured of "good faith and fair dealing." *Farmer's Group, Inc. v. Trimble*, 691 P.2d 1138 (Colo.1984). This duty derives from the *relationship* between the insurer and the party claiming benefits and permeates all of their dealings. Thus, breach of this duty, that is, conduct which would constitute bad faith, is not limited to the insurer's decision to grant or deny a claim. Rather, bad faith may present at any time during the course of conduct between the parties, including an insurer's conduct in investigating an injury justifying PIP recovery and its conduct subsequent thereto. *Williams v. Farmers Insurance Group, Inc.*, 781 P.2d 156 (Colo.App.1989), *aff'd*, 805 P.2d 419 (Colo.1991). *See also* Miller, *Insurance Bad Faith in Colorado*, 14 Colo.Law. 1157 (July 1985).

■ The record reveals that Budget declined at trial to call the adjuster who processed the plaintiffs' claims, despite testimony from plaintiffs' expert that Budget's investigation and denial of these claims were in bad faith. As the basis for this opinion, the expert cited the term in

the rental agreement which specifically provided that all coverages under the agreement automatically conformed to the basic requirements of any applicable no-fault law and the difficult but not novel fact situation plaintiffs' claims presented. Finally, he testified that the standard in the industry was to pay claims such as those presented by plaintiffs.

Budget's expert testimony was to the contrary. This testimony focused primarily, however, on the ambiguities in the Colorado and Texas statutes and the expert admitted that in rendering his opinion, he had no specific knowledge of how Budget had, in this instance, investigated and analyzed the plaintiffs' claims.

Viewing the foregoing evidence in the light most favorable to the verdict of the jury, we conclude that there was sufficient evidence to submit the question to the jury and from which the jury could have found that Budget's failure to pay plaintiffs' claims was unreasonable and that Budget knew that its failure to pay was unreasonable, notwithstanding the statutory ambiguities discussed under part I. Accordingly, we conclude that the trial court did not err in denying Budget's motion for judgment notwithstanding the verdict on plaintiffs' claim of bad faith.

### III.

▮ Budget next argues that the trial court erred in excluding from evidence its offers to plaintiffs to pay PIP benefits. We perceive no error.

The record reveals that the challenged evidence included a number of letters: one memorializing a settlement agreement arranged by Budget and plaintiffs' former counsel which involved the payment of future medical expenses and the dismissal of the bad faith claim; one by plaintiffs to various parties expressing dismay over this proposed agreement; and one by plaintiffs to the trial court relating their confusion over the status of the lawsuit. Budget also sought to introduce testimony regarding "numerous" settlement discussions which took place after summary judgment was entered on the issue of Budget's PIP liability under § 10–4–711.

Budget argues that this evidence was properly admissible both to negate plaintiffs' bad faith claim and to show plaintiffs' refusal to mitigate damages.

CRE 408 bars the admission of offers to compromise disputed claims, including evidence of conduct and statements made during the course of compromise negotiations. Nonetheless, exceptions to the rule exist when the evidence is offered for purposes other than to prove liability or invalidity of the claim amount. In such instances, however, the probative value of the evidence must outweigh the dangers of unfair prejudice, confusion of the issues, misleading of the jury, or considerations of undue delay, waste of time, or needless presentation of cumulative evidence. *See* CRE 403.

Here, the trial court, after considering Budget's offer of proof, found that the evidence concerned not just offers to pay but offers contingent on settlement of the whole case. Thus, it concluded the evidence was inadmissible under CRE 408. The trial court also found, in essence, that as to the purposes for which it was offered, the relevancy of the evidence was "far outweighed" by the considerations of CRE 403.

We find there is evidence in the record to support the trial court's findings and conclusions. Accordingly, its determination of inadmissibility was neither manifestly arbitrary, unreasonable, or unfair, and thus, it will not be disturbed on review. *See People v. Milton,* 732 P.2d 1199 (Colo.1987).

Budget's other contentions of evidentiary error are without merit.

### IV.

Both parties appeal the trial court's post-trial order on the issue of damages.

### A.

Budget asserts that the trial court erred in ordering a remittitur of the amount of damages on the plaintiffs' bad faith claim, rather than granting a new trial. The essence of its argument is that the trial court

made the findings necessary to grant a new trial. We disagree.

█ A trial court must grant a new trial if it finds that passion, prejudice, or bias have influenced the verdict. Absent such a finding, however, the trial court may properly deny a new trial "on the condition that the plaintiff agree to a remittitur of the amount of damages found to be excessive." *Burns v. McGraw–Hill Broadcasting Co.,* 659 P.2d 1351 (Colo. 1983).

█ Here, the record discloses that, in response to Budget's motion for a new trial/judgment notwithstanding the verdict, the trial court issued its order, finding that the damages were excessive "based upon the evidence of damages presented at trial."

The trial court further noted:

[The award on plaintiffs' bad faith claim] *indicates* that the jury must have been influenced by partiality or prejudice or have been misled by some mistaken view of the merit of the case. (emphasis added)

Subsequently, the trial court clarified this statement as follows:

In its order ... the court did not find one way or the other that the jury was or was not influenced by partiality or prejudice. The court does not know whether it was or was not so influenced. What the court did find was that the verdicts were excessive....

When the two orders are taken together and read as a whole, we conclude that the trial court merely speculated as to the possible cause of the excessive award but made no finding of bias passion or prejudice. Under these circumstances, the trial court did not err in denying Budget's motion for a new trial.

### B.

Plaintiffs' cross-appeal the order of remittitur. They argue that the trial court finding of excessiveness is not supported by the record. We disagree.

█ For a damage award to be sustained, there must be some evidence in the record upon which the award can be based. *J.C. Penny Co. v. Brown,* 155 Colo. 212, 393 P.2d 575 (1964).

█ Here, the record reveals that each plaintiff described his or her injuries and the effect which lack of treatment, caused by Budget's refusal to pay benefits, had on each of their lives. Indeed, the undisputed evidence showed that Budget's refusal to pay caused plaintiffs to lose jobs, face foreclosure, and sustain physical and emotional injury. However, the record further reveals that these losses, although linked to Budget's failure to pay, were never quantified by plaintiffs, by medical testimony or by documents, other than the medical bills submitted with regard to plaintiffs' statutory claims. Thus, while plaintiffs' testimony clearly showed the nature of the damages sustained and their causal relationship to Budget's bad faith denial of PIP benefits, there is, simply, no evidentiary foundation for the jury verdicts which awarded plaintiffs a total of $1,460,000.

In light of the foregoing, the trial court's finding that the verdict was excessive is supported by the record. Hence, its order of remittitur which awarded plaintiffs a total of $294,000 on their claim of bad faith will not be disturbed on appeal.

### V.

Both parties appeal the trial court's posttrial orders on the issue of attorney fees.

### A.

First, Budget contends that the trial court erred in its award of attorney fees to plaintiffs' former counsel. We agree in part.

█ Section 10–4–708(1), C.R.S. (1987 Repl.Vol. 4A) entitles plaintiffs to reasonable attorney fees on their statutory claims for relief. *See Leland v. Travelers Indemnity Co., supra.* This entitlement, however, does not extend to fees incurred in the prosecution of plaintiffs' claim of bad faith. *Williams v. Farmers Insurance Group, Inc., supra.*

Here, plaintiffs counsel presented time sheets and affidavits showing approximately 250 attorney hours at $100 to $125 per hour, and 96 non-attorney hours at $50 per hour, for the prosecution of plaintiffs' *statutory* claim. Plaintiffs' counsel also submitted an enhancement factor of 2.6 based on the "risk" associated with the prosecution of plaintiffs' lawsuit. Based on these figures, plaintiffs' former counsel sought an award of $78,566.42.

The trial court, noting that it had specifically accounted for the above-stated limitations on attorney fees, awarded plaintiffs' former counsel $35,092.67, in essence the "lodestar" amount, without a hearing.

The record further reveals, however, that Budget challenged former counsels' time sheets and requested a hearing on the reasonableness of the fees prior to the trial court's determination of the award.

█ If a party contests the reasonableness of a claim for attorney fees, a hearing must be held on the issue. *See Zarlengo v. Farrer,* 683 P.2d 1208 (Colo.App.1984).

█ Accordingly, we conclude that, while plaintiffs' former counsel is entitled to an award of attorney fees, Budget is, likewise, entitled to a hearing on the reasonableness of the attorney fees to be awarded.

### B.

█ Plaintiffs contend on cross-appeal that the trial court abused its discretion in failing to award present counsel attorney fees in accordance with § 10–4–708. We conclude that this issue cannot be determined without further findings.

The record discloses that no hearing was held on attorney fees. Plaintiffs' present counsel did, however, submit time sheets which established that 110 hours were spent in the representation of plaintiffs and their claims against Budget. Counsel also submitted a rate of $115 an hour.

The trial court, however, declined to award present counsel attorney fees. As the basis of its denial, the court stated:

Attorney fees are not recoverable on the claim against the defendant alleging bad faith. Virtually all of the attorney fees incurred in this case were for services rendered on that claim.

We conclude that the record provides an insufficient basis for a review of the trial court's conclusion as to the delineation of the statutory and bad faith claims. Hence, the cause must be remanded for a hearing for a determination of the reasonable hours expended on each claim, a reasonable hourly rate, and any factors which may adjust the reasonable attorney fees calculated from these figures.

### VII.

Finally, plaintiffs contend on cross-appeal that the trial court erred in dismissing their claims for exemplary damages. Upon review of the testimony and the exhibits presented at trial, we conclude that the trial court's action was proper.

The summary judgment granted in favor of plaintiffs is affirmed. The judgment entered on the jury verdicts awarding plaintiffs damages for unpaid benefits of $12,491.53 and treble damages of $33,934.59 plus interest is affirmed. The order of remittitur awarding plaintiffs $294,000 on their claim of bad faith breach of insurance contract is affirmed. Finally, the orders awarding plaintiff' former counsel $35,092.67 and denying plaintiffs' present counsel attorney fees are reversed, and the cause is remanded for hearings consistent with the views expressed in this opinion.

PIERCE and DAVIDSON, JJ., concur.