BUDGET RENT–A–CAR CORPORA-
TION, a Delaware corporation, Peti-
tioner/Cross–Respondent,

v.

Alvin James MARTIN; Susan B. Martin;
Thomas G. Williams; and Ollace M.
Williams, a/k/a C.W. Williams, a/k/a
Otis Williams, Respondents/Cross–Peti-
tioners.

No. 92SC266.

Supreme Court of Colorado,
En Banc.

July 19, 1993.

Burg & Eldredge, P.C., Scott J. El-
dredge, Kirstin G. Lindberg, Denver, for
petitioner, cross-respondent.

William A. Richardson, Denver, for re-
spondents, cross-petitioners.

Richard W. Laugesen, Denver, amicus
curiae.

Justice LOHR delivered the Opinion of
the Court.

This case presents an issue of coverage
for no-fault insurance claims asserted by
the .plaintiffs [1] against Budget Rent–A–Car
Corporation (Budget) for injuries sustained
as passengers in a motor vehicle rented in
Colorado and involved in an accident in
Texas. The trial court granted partial
summary judgment for the plaintiffs on the
issue of coverage, holding that they were
entitled to no-fault personal injury protec-
tion insurance benefits under certain provi-
sions of the Colorado Auto Accident Repa-
rations Act, §§ 10–4–701 to –723, 4A C.R.S.
(1987) (the No–Fault Act).[2] In the ensuing
jury trial, the trial court held that the evi-
dence was insufficient to support an in-
struction on exemplary damages and dis-
missed the plaintiffs' claim for such dam-
ages. The court of appeals affirmed on
both issues. *Martin v. Principal Casual-
ty Insurance Company*, 835 P.2d 505
(Colo.App.1991). We granted Budget's pe-
tition for certiorari to review the coverage
issue and granted the plaintiffs' cross-peti-
tion to review the exemplary damages is-
sue. We hold that the No–Fault Act does
not extend the claimed benefits to the
plaintiffs for injuries sustained in the Tex-
as accident. As a result, it is unnecessary
for us to reach the issue of whether the
trial court erred in dismissing the plain-
tiffs' claim for exemplary damages, and we
remand with directions that the case be

---

1. The plaintiffs at trial, who are the respon-
dents/cross-petitioners in this case, are Alvin
James Martin, Susan B. Martin, Thomas G.
Williams, and Ollace M. Williams, a/k/a C.W.
Williams, a/k/a Otis Williams. We refer to
them as the plaintiffs.

2. The No–Fault Act has been amended several
times since 1987. None of these amendments is
relevant to the outcome of this case, and there-
fore all references in this opinion to provisions
of the No–Fault Act are to provisions of the No–
Fault Act that appear in .4A C.R.S. (1987).

returned to the trial court for further proceedings in accordance with this opinion.

## I

The plaintiffs alleged in their complaint, filed in Denver District Court, that on or about August 2, 1988, Budget, as lessor, rented a mini-van in Colorado, and that Carol Lewis was listed as an additional driver on the rental agreement. The plaintiffs further alleged that at approximately 11:15 p.m. on or about August 2, 1988, they were occupants in the mini-van when it was involved in a single-car accident as the vehicle was being driven by Carol Lewis in Texas. The plaintiffs sought a declaratory judgment against Budget to determine that under the No-Fault Act they were entitled to receive no-fault personal injury protection (PIP) insurance benefits from Budget to cover various medical expenses they incurred as a result of injuries sustained in the accident. The plaintiffs asserted a claim for breach of insurance contract and also claimed that they were entitled to receive damages, including exemplary damages pursuant to section 13–21–102, 6A C.R.S. (1987), on the ground that Budget committed the tort of bad faith breach of insurance contract by the manner in which it refused to pay them PIP benefits on their claims following the accident.[3]

Budget and the plaintiffs filed cross-motions for summary judgment on the issue of whether Budget was obligated to provide PIP coverage to the plaintiffs under the No–Fault Act. On August 23, 1989, the trial court granted summary judgment in favor of the plaintiffs on that issue. The trial court found that the driver of the mini-van rented it in Colorado and drove it to Texas where the vehicle was involved in an accident while the plaintiffs were passengers. The trial court held that under section 10–4–711(3),[4] Budget was obligated to provide the plaintiffs with no-fault PIP insurance coverage to the extent of the minimum Colorado coverage required by sections 10–4–706 and 10–4–707,[5] or to the

---

**3.** In their complaint, the plaintiffs also asserted claims against Principal Casualty Insurance Company (Principal) and Sears, Roebuck, & Company, d/b/a Sears Rent–A–Car (Sears). The trial court granted summary judgment in favor of Principal on June 6, 1989, and entered final judgment in favor of Principal on October 3, 1989. On April 27, 1990, the plaintiffs moved to amend the caption in this action by removing the name of Sears on the ground that no process had ever been served on Sears. Only the plaintiffs and Budget are before us on certiorari review.

**4.** § 10–4–711(3) provides:

Notwithstanding any of its other terms and conditions, every complying policy shall afford coverages at least as extensive as the minimum coverages required by operation of sections 10–4–706 and 10–4–707, during such periods of time as the insured motor vehicle is operated in other jurisdictions of the United States, its territories or possessions, and the provinces of Canada, as the statutes, laws, or administrative regulations of such other jurisdictions require with respect to liability, or financial responsibility, and direct benefit, or first party coverages for operators, occupants, and persons involved in accidents arising out of use or operation of motor vehicles within such other jurisdictions.

**5.** § 10–4–707 provides in relevant part:
(1) The coverages described in section 10–4–706(1)(b) to 1(e) shall be applicable to:

(a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction ...

(b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere) ...

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured....

§ 10–4–706 provides in relevant part:
(1) Subject to the limitations and exclusions authorized by this part 7, the minimum coverages required for compliance with this part 7 are as follows:
. . . .

(b) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary [medical expenses] ... performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle; ...

(c)(I)(A) Compensation without regard to fault for payment of the cost of rehabilitation . . .. necessary because of bodily injury arising out of the use or operation of a motor vehicle....

extent required by Texas law, whichever coverage was greater. The trial court concluded: "Summary judgment on the question of coverage pursuant to C.R.S. 10–4–706, 707 is granted for the plaintiffs and against the defendant Budget Rent–A–Car."

A jury trial was conducted in April of 1990. After the presentation of evidence by the plaintiffs, Budget moved for a directed verdict against the plaintiffs on their claim for tortious bad faith breach of insurance contract and in the alternative, on the plaintiff's entitlement to exemplary damages based on that claim. The trial court denied Budget's motion as to the plaintiffs' claim for tortious bad faith breach of insurance contract, but it agreed with Budget that based on the evidence, the plaintiffs could not be awarded exemplary damages even if they prevailed on their claim for bad faith breach of insurance contract.

After all of the evidence was presented, the court instructed the jury on the law governing the case. The jury was instructed that prior to trial "[t]he Court ... determined that the claims of the Plaintiffs are covered by the policy issued by the Defendant Budget." Jury Instruction No. 1. With regard to the plaintiffs' claim for breach of insurance contract, the jury was instructed that in order for the plaintiffs to prevail, the jury must find that all of the following were proved:

1. The health-care providers performed services to Plaintiffs which arose out of a motor vehicle accident which occurred on August 2, 1988, and reasonable proof of such services was submitted to Defendant.

2. The health-care services rendered to Plaintiffs were reasonable, necessary and caused by the accident.

3. The Defendant has failed to pay for reasonable and necessary health-care services.

Jury Instruction No. 10. With regard to the plaintiffs' claim for tortious bad faith breach of insurance contract, the jury was instructed that in order for the plaintiff to recover, the jury must find that all of the following were proved:

1. The plaintiffs incurred injuries, damages, or losses;

2. The defendant acted unreasonably in delaying payment of the plaintiffs' claim;

3. The defendant knew such position was unreasonable or the defendant recklessly disregarded the fact that its position was unreasonable; and

4. The defendant's unreasonable position was a cause of the plaintiffs' injuries, damages, and losses.

Jury Instruction No. 11.

By special verdict, the jury found that each plaintiff had submitted to Budget certain bills, itemized by provider, for reasonable and necessary medical service treatment "that should have been paid by Defendant Budget Rent–A–Car." Verdict Form A. The jury also found that Budget committed the tort of bad faith breach of insurance contract, and that as a result the plaintiffs suffered damages in the total amount of $1,460,000.

In light of the large award of damages, Budget moved for a new trial, or in the alternative, a remittitur deducting the damages awarded on the bad faith breach of insurance contract claim. The trial court ruled that it would order a new trial unless the plaintiffs agreed to a remittitur of the damages awarded for tortious bad faith breach of insurance contract, and the plaintiffs consented to the remittitur. Judgment was entered in favor of the plaintiffs in the total amount of approximately $353,-000, including interest and costs.[6]

The court of appeals affirmed. According to the court of appeals, sections 10–4–707 and 10–4–711(3) "apparently conflict[ ]," *Martin*, 835 P.2d at 509, because section 10–4–711(3) "expressly and specifically require[s]," *id.* at 508, no-fault coverage for persons in the position of the plain-

---

**6.** Each plaintiff received a specified portion of this award, unnecessary to detail here. In addition, the plaintiffs' former attorneys were awarded approximately $35,000 against Budget under § 10–4–708 for reasonable attorney fees incurred by the plaintiffs in pursuing their contract claims.

tiffs, whereas section 10–4–707 seems to preclude mandatory no-fault coverage for persons in the position of the plaintiffs, *id.* at 508–09. Because of this "apparent[ ] conflict[ ]," *id.* at 509, the court of appeals resorted to an analysis of the underlying policy concerns of the No–Fault Act, and concluded that it was "unthinkable" that the intent of the General Assembly could have been to deny coverage to persons in the position of the plaintiffs. *Id.*

We granted Budget's petition for certiorari to address the first of the following issues and granted the plaintiffs' cross-petition to address the second:

Whether the court's ruling that passengers involved in out of state automobile accidents are entitled to personal injury protection benefits is supported by Colorado law.

Whether the dismissal of the exemplary damage claims violated Colorado law.

## II

We begin our analysis by noting that throughout this proceeding, the plaintiffs have alleged that Budget was the owner of the mini-van involved in their accident, that Budget knowingly permitted the operation of that mini-van on the public highways of this state, and that therefore, Budget was obligated under the No–Fault Act to have in full force and effect a complying no-fault insurance policy that covered the mini-van.[7] Budget, in its pleadings, has not expressly conceded that it was the owner of the mini-van. Implicit in the trial court's entry of

partial summary judgment in favor of the plaintiffs, however, is a finding that Budget was obligated under the No–Fault Act to have in full force and effect a complying no-fault policy that covered the mini-van. Budget has never contested this implicit finding, and has instead argued on appeal that the No–Fault Act does not require that complying policies provide PIP coverage to persons such as the plaintiffs in this case. We therefore take it as settled that Budget was obligated under the No–Fault Act to have a complying policy in force that covered the mini-van.

We further note that the plaintiffs did not and do not maintain that anything in Budget's rental agreement extends their PIP coverage beyond what is minimally required under the No–Fault Act.[8] The primary issue in this case, therefore, is whether under the terms of the No–Fault Act, Budget's complying policy was required to extend PIP coverage to the plaintiffs.

In resolving this issue, we begin with section 10–4–711(3), which provides in relevant part:

Notwithstanding any of its other terms and conditions, every complying policy shall afford coverages at least as extensive as the minimum coverages required by operation of sections 10–4–706 and 10–4–707, during such periods of time as the insured motor vehicle is operated in other jurisdictions of the United States ... as the statutes, laws, or administra-

---

**7.** § 10–4–705(1) provides in pertinent part:

Every owner of a motor vehicle who ... knowingly permits the operation of the motor vehicle on the public highways of this state shall have in full force and effect a complying policy under the terms of [the No–Fault Act] covering the said motor vehicle....

§ 10–4–703 provides in pertinent part:

"Complying policy" means a policy of insurance approved by the commissioner, which provides the coverages and is subject to the terms and conditions required by [the No–Fault Act].

**8.** Budget's rental agreement provides:

6) **LIABILITY INSURANCE:** IF THERE IS NO VIOLATION OF ANY OF THE USE RESTRICTIONS IN PARAGRAPH 5 ABOVE,

Renter and any Authorized Driver shall, while operating the Vehicle be provided with liability coverage in accordance with the standard provisions of a Basic Automobile Liability Insurance Policy or in accordance with the requirements of a qualified self-insurer instead of such coverage, for protection against liability for causing bodily injury (including death) and property damage with one of the following applicable coverage limits:—coverage limits imposed by the state financial responsibility law where this rental transaction takes place....

A. All coverages automatically conform to the basic requirements of any "No–Fault" law which may be applicable. RENTER WAIVES UNINSURED AND UNDERINSURED MOTORIST, SUPPLEMENTAL NO–FAULT AND OTHER OPTIONAL COVERAGES.

tive regulations of such other jurisdictions require with respect to ... direct benefit ... for ... occupants ... involved in accidents arising out of use or operation of motor vehicles within such other jurisdictions.

By the plain language of this statute, the plaintiffs were entitled to PIP "coverages at least as extensive as the minimum coverages required by operation of sections 10–4–706 and 10–4–707" during such period of time as the mini-van was operated in Texas, or to more extensive coverage as the statutes, laws, or administrative regulations of Texas require.

Section 10–4–706 defines minimum required PIP coverages in terms of the types of expenses or losses that must be covered, and in terms of the minimum dollar amounts of coverage that must be provided per category of expense or loss per accident. For example, section 10–4–706(1) provides in part:

> Subject to the limitations and exclusions authorized by this part 7, the minimum coverages required for compliance with this part 7 are as follows:
>
> ....
>
> (b) Compensation without regard to fault, up to a limit of fifty thousand dollars per person for any one accident, for payment of all reasonable and necessary expenses for medical, chiropractic, optometric, podiatric, hospital, nursing, X-ray, dental, ... [etc.] services ... performed within five years after the accident for bodily injury arising out of the use or operation of a motor vehicle....

There has been no dispute in this case regarding the operation of the limits on coverages set by section 10–4–706(1). Rather, the dispute centers on section 10–4–707, which provides in relevant part:

> (1) The coverages described in section 10–4–706(1)(b) to 1(e) shall be applicable to:
>
> (a) Accidental bodily injury sustained by the named insured when injured in an accident involving any motor vehicle, regardless of whether the accident occurs in this state or in any other jurisdiction ...

> (b) Accidental bodily injury sustained by a relative of the named insured under the circumstances described in paragraph (a) of this subsection (1), if the relative at the time of the accident is a resident in the household of the named insured (whether or not temporarily residing elsewhere) ...

> (c) Accidental bodily injury arising out of accidents occurring within this state sustained by any other person while occupying the described motor vehicle with the consent of the insured....

Section 10–4–707 plainly establishes three categories of persons who are eligible under certain circumstances for the benefits provided by the coverages described in section 10–4–706(1)(b) to 1(e). The three categories of eligibility are as follows: first, named insureds of a complying policy, regardless of where the accident occurs; second, relatives of a named insured of a complying policy who are residing in the household of the named insured at the time of the accident, regardless of where the accident occurs; third, occupants who are in a described motor vehicle with the consent of an insured, if the accident occurs in Colorado.

The plaintiffs did not and do not maintain that they are either named insureds of a complying policy or relatives of a named insured who were residing in the household of the named insured at the time of the accident. Therefore, if Budget is obligated under section 10–4–707 to provide the plaintiffs with the PIP coverages described in section 10–4–706, it must be because the plaintiffs were occupying a described motor vehicle with the consent of an insured when that motor vehicle was involved in an accident in Colorado.

According to the No–Fault Act, a "described motor vehicle" means "the motor vehicle described in the complying policy," § 10–4–703(4), and an "insured" includes "any person using the described motor vehicle with the permission of the named insured," § 10–4–703(6). As earlier indicated, Budget has never contested on appeal the trial court's implicit finding that Bud-

get was obligated under the No–Fault Act to have in full force and effect a complying no-fault policy that covered the mini-van, and thus Budget has not contested on appeal whether the mini-van was "a described motor vehicle" under the No–Fault Act. Furthermore, Budget has not argued that the plaintiffs were occupying the mini-van without the consent of an insured. However, Budget does argue, and the record clearly establishes, that the accident occurred in Texas, and not in Colorado. Thus, section 10–4–707(1)(c) does not extend PIP coverage to the plaintiffs in this case.

Nevertheless, our holding that Budget was not obligated to provide PIP coverage to the plaintiffs "by operation of sections 10–4–706 and 10–4–707," § 10–4–711(3), does not mean that Budget was not obligated to provide PIP coverage to the plaintiffs by operation of section 10–4–711(3). Rather, as we have already indicated, section 10–4–711(3) provides that the plaintiffs are entitled to PIP coverages as the statutes, laws, or administrative regulations of Texas require, if such coverage is more extensive than that afforded by the operation of sections 10–4–706 and 10–4–707. Because the operation of sections 10–4–706 and 10–4–707 does not afford the plaintiffs any PIP coverage for accidents occurring in

Texas, the plaintiffs are entitled to those PIP benefits, if any, that Budget is obligated to provide to them under the statutes, laws, or administrative regulations of Texas.[9]

The trial court's order granting partial summary judgment in favor of the plaintiffs did not expressly state that the plaintiffs were entitled under section 10–4–707 to the coverages described in section 10–7–706. However, the trial court stated that Budget was obligated under section 10–4–711(3) to provide the plaintiffs with no-fault coverage to the extent of the minimum Colorado coverage required by sections 10–4–706 and 10–4–707, or to the extent required by Texas law, whichever coverage was greater, and then the court concluded: "Summary judgment on the question of coverage pursuant to C.R.S. 10–4–706, 707 is granted for the plaintiffs and against the defendant Budget Rent–A–Car." This suggests that the trial court believed that Budget was obligated to provide PIP coverage to the plaintiffs by operation of sections 10–4–706 and 10–4–707.

Moreover, it is plain from the jury instructions, and from the absence of any ruling on Texas law by the trial court, that the trial was premised on the erroneous legal conclusion that Budget was obligated

---

**9.** Because the statutory language in §§ 10–4–707 and 10–4–711(3) is clear and unambiguous, there is no need to resort to other interpretive rules of statutory construction in order to give effect to the intent of the General Assembly. *See Jones v. Cox,* 828 P.2d 218, 221 (Colo.1992). In particular, we perceive no basis in § 10–4–711(3) for holding, as did the court of appeals, that the General Assembly "expressly and specifically required that complying policies provide coverage for persons in [the plaintiffs'] position when it enacted § 10–4–711(3)." *Martin,* 835 P.2d at 508. We likewise perceive no basis for concluding, as did the court of appeals, that there is an "apparent[ ] conflict[ ]," *id.* at 509, between §§ 10–4–707(1)(c) and 10–4–711(3). Nor is it "unthinkable to assume," *see id.,* that the General Assembly did not intend for persons such as the plaintiffs to be covered by a complying policy. *Cf.* 1 Irvin E. Schermer, *Automobile Liability Insurance: No–Fault Insurance, Uninsured Motorists, Compulsory Coverage* § 1:05, at 1–25 (2d ed. 1993) ("An occupant of an insured vehicle who is not a basic insured is not granted

out-of-state coverage under the Colorado, Delaware, Florida, Kansas, and New York acts."). Rather, it was within the province of the General Assembly to decide that an occupant of a motor vehicle described in a complying policy, who is neither a named insured nor relative residing therewith, may be entitled to receive PIP benefits as a result of an accident in Colorado, but is only entitled under Colorado law to PIP benefits as a result of an accident in Texas to the extent that Texas law requires such coverage. As Budget points out in its brief, although one of the purposes of the No–Fault Act is to avoid inadequate compensation to victims, *see* § 10–4–702, the General Assembly plainly did not intend for the category of persons who are entitled to reimbursement of medical expenses to be unlimited. By virtue of the operation of § 10–4–707, the General Assembly has limited this category, and adoption of such a limitation is within the legislative prerogative. *See Kallenberger v. Buchanan,* 649 P.2d 314, 318 (Colo. 1982) (per curiam).

to provide coverage to the plaintiffs by the operation of sections 10–4–706 and 10–4–707.[10] Specifically, with regard to the plaintiffs' breach of insurance contract claim, the jury was instructed on the premise that Budget was basically obligated to provide PIP coverage to the plaintiffs, and that the only issues to be decided were the sufficiency of the plaintiffs' proof of claims and the amount of damages.[11] Consequently, with regard to the plaintiffs' claim for tortious bad faith breach of insurance contract, the jury was also led to believe that Budget was obligated to provide PIP coverage to the plaintiffs, and the jury was instructed to determine only whether Budget acted recklessly or unreasonably in delaying payment of the plaintiffs' claims, and if so, the amount of damages.[12]

The judgment entered in favor of the plaintiffs on their claims for breach of insurance contract and for tortious bad faith breach of insurance contract was based on a faulty legal premise and on jury instructions that were substantially misleading and prejudicial to Budget. Under such circumstances, the judgment cannot stand,[13] and it is therefore unnecessary for us to determine whether the trial court erred by dismissing the plaintiffs' claim for exemplary damages. Accordingly, we must reverse the judgment of the court of appeals and direct that the case be returned to the trial court. The trial court should then conduct further proceedings, including such proceedings as may be necessary to determine under "the statutes, laws, or ad-

ministrative regulations," § 10–4–711(3), of Texas whether Budget was obligated to provide insurance coverage to the plaintiffs, and if so, to what extent.[14] If Budget was not obligated to provide such coverage to the plaintiffs, then the plaintiffs' claims arising by operation of section 10–4–711(3) for breach of insurance contract and tortious bad faith breach of insurance contract must fail. If Budget was obligated to provide such coverage, then it is necessary to determine the amount of damages, if any, to which the plaintiffs are entitled on either or both of those claims, including the possibility of exemplary damages on their claim for tortious bad faith breach of insurance contract.

Judgment reversed. We remand this case to the court of appeals with directions that it be returned to the trial court for further proceedings in accordance with this opinion.

SCOTT, J., does not participate.

10. As indicated earlier, the trial court instructed the jury that "[t]he Court … determined that the claims of the Plaintiffs are covered by the policy issued by the Defendant Budget." Jury Instruction No. 1.

11. *See supra* p. 1379; *see also supra* note 10.

12. *See supra* p. 1379.

13. Budget filed a motion in the trial court requesting that it certify the partial summary judgment in favor of the plaintiffs as final and appealable pursuant to C.R.C.P. 54(b). In that motion, Budget interpreted the trial court's order as "determin[ing] that the Defendant Budget was responsible under C.R.S. 10–4–706, 707 to

pay PIP benefits to the Plaintiffs." Budget argued that the plaintiffs' other claims for relief were predicated on that determination, and that if Budget were not allowed to appeal that determination until after the trial, a second trial could be required. The record does not reflect that the trial court ever ruled on Budget's motion. We recount this aspect of the proceedings in the trial court only to make explicit that Budget preserved its right to challenge on appeal whether it was required to provide PIP coverage to the plaintiffs by operation of §§ 10–4–706 and 10–4–707.

14. We express no opinion on the substance or operation of Texas law as it may apply to the present controversy.