Clifford RANGER, Plaintiff–Appellant,

v.

FORTUNE INSURANCE COMPANY,
a foreign corporation, Defendant–
Appellee.

No. 92CA1748.

Colorado Court of Appeals,
Div. I.

Feb. 24, 1994.

Rehearing Denied April 14, 1994.

Certiorari Denied Sept. 19, 1994.

Lloyd C. Kordick & Associates, Lloyd C. Kordick, Colorado Springs, for plaintiff-appellant.

Retherford, Mullen, Johnson & Bruce, J. Ronald Voss and Amelia L. Klemme, Colorado Springs, for defendant-appellee.

Opinion by Chief Judge STERNBERG.

In this action to recover punitive and treble damages for an insurer's alleged bad-faith refusal to pay personal injury protection (PIP) benefits, plaintiff, Cliff Ranger, appeals from the summary judgment entered in favor of defendant, Fortune Insurance Co., a Florida corporation. We reverse and remand.

The complaint alleged that, in 1984, plaintiff, a Colorado resident, was injured in an automobile accident in Colorado. It further alleged that, at the time of the accident, plaintiff was riding as a passenger in a vehi-

cle insured by Fortune. According to the complaint, although Fortune had admitted coverage of the driver of the vehicle and the accident's occurrence within Colorado, it had refused to pay plaintiff's medical bills.

Fortune filed a motion to dismiss the action for lack of jurisdiction, which was granted by the trial court. In a previous appeal, a division of this court concluded that plaintiff had established a prima facie case of personal jurisdiction and reversed the judgment of dismissal, remanding the case with an order to reinstate the complaint. *See Ranger v. Fortune Insurance Co.,* 817 P.2d 600 (Colo. App.1991).

Following the remand, Fortune filed an answer asserting several affirmative defenses. It also filed a motion for summary judgment asserting that, under Florida law, it had no obligation to pay plaintiff any PIP benefits. Fortune further asserted that it would be unconstitutional to construe § 10–4–711(4)(a), C.R.S. (1987 Repl.Vol. 4A) of the Colorado Auto Accident Reparations Act (the No–Fault Act) to require a Florida insurer to pay such benefits to plaintiff.

Plaintiff filed a cross-motion for summary judgment, with supporting documents, asserting that, although Fortune had subsequently paid the medical bills "many years late," plaintiff was entitled to treble damages and 18% interest on the unpaid medical bills. After oral argument, the trial court granted Fortune's motion for summary judgment and denied plaintiff's cross-motion on the basis that Florida law governed the coverage available to plaintiff under the policy.

## I.

Plaintiff contends that the trial court erred in concluding that Florida law was applicable to the facts of this case. In support of this contention, plaintiff argues that the trial court should have applied Colorado law, specifically § 10–4–711(4)(a). We agree.

█ In the area of multistate tort controversies, Colorado has adopted the general rule of applying the law of the state having the most "significant relationship" with the occurrence and the parties as contained in the Restatement (Second) Conflict of Laws § 145 (1971). *First National Bank v. Rostek,* 182 Colo. 437, 514 P.2d 314 (1973); *Abdelsamed v. New York Life Insurance Co.,* 857 P.2d 421 (Colo.App.1992).

█ We are further guided by the principles in comment (c) to that Restatement section, namely, that when a tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred, which is often where the plaintiff resides, may have the greater interest in the controversy.

Here, the insured driver of the vehicle was visiting this state, and plaintiff, a Colorado resident, was riding in the vehicle as a passenger at the time of the accident. Accordingly, we conclude that, in this case, Colorado—not Florida—had the most significant relationship with the occurrence and the parties and that, therefore, its law should apply.

█ Addressing the application of Colorado law, we note that one of the primary purposes of the General Assembly in enacting the No–Fault Act was to avoid inadequate compensation to victims of automobile accidents. Section 10–4–702, C.R.S. (1987 Repl.Vol. 4A).

Section 10–4–711(4)(a) provides as follows:

Notwithstanding any of its other terms and conditions, *every contract* of liability insurance for injury, *wherever issued,* covering ownership, maintenance, or use of a motor vehicle, *shall provide coverages* at least as extensive as the minimum coverages required by operation of sections 10–4–706 and 10–4–707 ... *while [the vehicle] is in this state.* (emphasis supplied)

Further, with certain limitations not pertinent here, § 10–4–706, C.R.S. (1987 Repl.Vol. 4A) provides for compensation of reasonable and necessary medical expenses for bodily injury. In addition, § 10–4–707(1)(c), C.R.S. (1987 Repl.Vol. 4A) provides that this coverage shall apply to all accidental bodily injury arising out of *accidents occurring within Colorado* sustained by a passenger, who is neither the insured nor a relative, while occupying the described motor vehicle with the consent of the insured.

Because this statutory language is clear and unambiguous, we conclude that there is no need to resort to other interpretive rules of statutory construction in order to give effect to the intent of the General Assembly. *See Budget Rent–A–Car Corp. v. Martin,* 855 P.2d 1377 (Colo.1993).

Pursuant to the express terms of the statute, while its insured vehicle was in Colorado, Fortune was required to provide personal injury protection coverage to a passenger in its insured vehicle who was injured in an accident occurring in Colorado.

Accordingly, contrary to Fortune's argument, we do not agree that this case is governed by choice of law principles applicable to insurance contract actions as set forth in Restatement (Second) Conflict of Laws § 193 (1971). Here, Fortune's obligation to plaintiff arose not from the express language of the insurance contract but from statutory enactments reflecting this state's public policy concerning injuries arising out of Colorado automobile accidents. *See* § 10–4–707(1)(c). Under these circumstances, the trial court was required to apply the directives of the General Assembly. *See* Restatement (Second) Conflicts of Laws § 6(1) (1971).

## II.

■ In support of the judgment, however, Fortune contends that, because the Florida automobile involved in the accident was not required to be registered in Colorado, it was not a "motor vehicle" within the meaning of § 10–4–703(7), C.R.S. (1987 Repl.Vol. 4A) of the No–Fault Act. Therefore, Fortune argues, it cannot be required to provide PIP benefits to plaintiff because he was not an occupant of a "motor vehicle." We reject this contention.

Our primary task in interpreting the No–Fault Act is to provide a construction that will render it effective in accomplishing the purpose for which it was enacted. *See Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991). Further, the No–Fault Act must be liberally construed in light of its entire statutory scheme. *Murphy v. Dairyland Insurance Co.,* 747 P.2d 691 (Colo.App. 1987).

Section 10–4–703, C.R.S. (1987 Repl.Vol. 4A) sets forth the definitions of certain terms used in the Act. Section 10–4–703(7) defines "motor vehicle" as:

> any vehicle *of a type* required to be registered and licensed under the laws of this state and which is designed to be propelled by an engine. (emphasis supplied)

Given the beneficent purpose of the Act to compensate victims of automobile accidents, we conclude that this definition includes any vehicle having the physical characteristics which require registration and licensing. Accordingly, contrary to Fortune's contention, the vehicle does not have to be registered and licensed here.

Further, we do not view *Bushnell v. Sapp,* 194 Colo. 273, 571 P.2d 1100 (1977) as inconsistent with the result we reach here. There, the supreme court upheld the constitutional validity of the No–Fault Act in a case involving an unregistered police vehicle for which Colorado Springs had purchased insurance coverage similar to that required by the Act. In concluding that the plaintiff in that case could not pursue an independent tort action against the City, the court relied upon § 10–4–715(1)(a), C.R.S. (1987 Repl.Vol. 4A) which authorizes the owner of an exempt vehicle to purchase equivalent insurance in order to avoid direct tort liability.

The issue here, however, is not whether the driver of the vehicle could purchase certain insurance to circumvent tort liability to an injured passenger. Rather, the question is whether Fortune must provide benefits to a Colorado passenger injured in a Colorado accident involving its insured because the insured vehicle was of a type covered by the No–Fault Act. For the reasons stated, we conclude that Fortune was so obligated.

## III.

In support of the judgment, Fortune also contends that, when § 10–4–711(4)(a) and (b), C.R.S. (1987 Repl.Vol. 4A) are read together, the requirement to pay PIP benefits applies only to insurers transacting or authorized to transact business in Colorado. In support of this contention, plaintiff relies on *Burgie v.*

*League General Insurance Co.,* 355 N.W.2d 466 (Minn.App.1984). We disagree.

Section 10–4–711(4)(a) mandates the minimum coverage which must be provided under the No–Fault Act. Section 10–4–711(4)(b) prohibits an insurer authorized to transact business in this state from excluding that coverage. The *Burgie* court reconciled somewhat similar provisions in the Minnesota No–Fault Act to restrict application of such statute to carriers authorized to transact business in Minnesota. We do not find that interpretation to be consistent with the public policy underlying the Colorado Act.

In our view, the analysis by the *Burgie* court does not address a primary purpose of the No–Fault Act which, in Colorado, is to avoid inadequate compensation to victims of automobile accidents. *See* § 10–4–702; *Allstate Insurance Co. v. Allen,* 797 P.2d 46 (Colo.1990). While not dispositive of the issue here, we find the opinion of the supreme court in *Budget Rent–A–Car Corp. v. Martin, supra,* instructive.

In that case, the plaintiffs were passengers involved in an automobile accident in Texas. Budget had supplied the rented car in Colorado. The supreme court held that Colorado's No–Fault Act did not extend PIP benefits to the out-of-state plaintiffs (who were merely passengers, not the insured or his relatives) for injuries incurred in a Texas accident. However, because § 10–4–711(3), C.R.S. (1987 Repl.Vol. 4A) provided that plaintiffs were entitled to any PIP coverage afforded by the laws of the state where the accident occurred, the court declared:

> [I]t was within the province of the General Assembly to decide that an occupant of a motor vehicle described in a complying policy, who is neither a named insured nor relative residing therewith, may be entitled to receive PIP benefits as a result of an accident in Colorado, but is only entitled under Colorado law to PIP benefits as a result of an accident in Texas to the extent that Texas requires such coverage.

*Budget Rent–A–Car Corp. v. Martin, supra,* 855 P.2d at 1382 (fn. 9) (emphasis added).

Accordingly, we conclude that Fortune was obligated by the provisions of § 10–4–711(4)(a) to afford the requisite coverage to an injured Colorado passenger while Fortune's insured vehicle was operated in this state.

## IV.

■ As its final contention in support of the judgment, Fortune asserts that it would be constitutionally impermissible to apply the provisions of § 10–4–711(4)(a) to an insurer not authorized to transact business in Colorado. Relying on *Allstate Insurance Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), Fortune argues that the facts that the automobile accident occurred in Colorado and that plaintiff, a Colorado resident, obtained medical treatment here were not sufficiently significant contacts with the parties or the occurrence to give Colorado any interest in regulating Fortune's insurance obligations. Thus, Fortune argues that, because it was not licensed to do business in Colorado and was unaware that its insured had taken his vehicle to Colorado, it could not have anticipated that Colorado law might apply to an accident in which its insured was involved. Again, we are not persuaded.

In *Allstate Insurance Co. v. Hague, supra,* the United States Supreme Court declared that, for a state's substantive law to be selected in a constitutionally permissible manner, that state must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair. It further stated, however, that application of the law of more than one jurisdiction may be constitutionally justifiable if more than one jurisdiction has some contact with the controversy.

As noted previously, Restatement (Second) Conflict of Laws § 145 comment (c) (1971) provides that, when a tort rule is designed primarily to compensate the victim for his injuries, the state where the injury occurred and the plaintiff resides may have the greater interest in the matter. Thus, we conclude that it was constitutionally permissible for the General Assembly to decide that an occupant of an insured out-of-state motor vehicle, who is neither the named insured nor his or

her relative, may be entitled to recover PIP benefits as a result of an accident in Colorado. *See Budget Rent–A–Car Corp. v. Martin, supra.* We further conclude that this is especially true under circumstances in which, as here, the plaintiff passenger was a Colorado resident.

## V.

Plaintiff raises the contention that, in the event of reversal, this court should remand the case to the trial court with instructions to enter judgment for plaintiff, holding that he is entitled to treble damages, interest at 18 per cent, attorney fees, and costs. However, we conclude that existing, unresolved questions of material fact preclude our determination of these issues as a matter of law. *See Dominguez Reservoir Corp. v. Feil,* 854 P.2d 791 (Colo.1993); *Hatfield v. Barnes,* 115 Colo. 30, 168 P.2d 552 (1946) (summary judgment improper where factual question remained as to party's good faith).

The judgment is reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

TURSI and BRIGGS, JJ., concur.