Carol McCONNELL, Petitioner,

v.

ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,
Respondent.

No. 94SC726.

Supreme Court of Colorado,
En Banc.

Nov. 14, 1995.

Norton Frickey & Associates of Colorado Springs, P.C., Dan O. Adkins, Colorado Springs, for Petitioner.

Law Offices of Taylor, McQuiston, McCune & Barbo, John E. Taylor, Aurora, for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

We granted certiorari to review *McConnell v. St. Paul Fire and Marine Insurance Co.,* 894 P.2d 11 (Colo.App.1994), denying Carol McConnell, the plaintiff, personal injury protection benefits for injuries she sustained in an automobile accident. The court of appeals held that the Colorado Auto Accident Reparations Act, sections 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.) ("No–Fault Act"), does not mandate coverage for a passenger riding in a vehicle without consent from an insured, regardless of the passenger's good faith belief to the contrary. *See McConnell,* 894 P.2d at 13. We affirm the judgment of the Colorado Court of Appeals.

I.

The facts pertinent to this appeal are not in dispute and derive from the parties' attachments to their respective summary judgment motions before the trial court.

Carol McConnell, the plaintiff below and the petitioner here, was injured while riding as a passenger in an automobile driven by Byron Brewer and owned by James Dart. James Dart is the father of Brewer's girlfriend, Jean Dart. James Dart allowed his daughter primary use of the vehicle but forbade Brewer, an unlicensed driver, to drive it. Brewer was aware of this prohibition. James Dart maintained insurance on the car through St. Paul Fire and Marine Insurance Company (St. Paul), the respondent. Brewer also maintained automobile insurance for

himself through Mid–Century Insurance Company (Mid–Century).

On July 20, 1991, Jean Dart parked the vehicle in front of Brewer's apartment and left the keys for the vehicle inside the apartment. Jean had specifically told Brewer on prior occasions that he was not allowed to use the car. However, Brewer did use the car at least once and at that time offered McConnell transportation. When McConnell accepted the ride, she was unaware that Brewer was forbidden from using the vehicle and that he was driving without a license.[1] While Brewer was driving the vehicle, he lost control and an accident occurred. McConnell was injured and incurred damages in the amount of approximately $20,000 for medical expenses and approximately $7,000 for lost wages. She sought recovery for these expenses from St. Paul under James Dart's insurance policy. McConnell also sought recovery from Mid–Century Insurance Company (Mid–Century) under Brewer's automobile insurance policy.

St. Paul and Mid–Century denied coverage and McConnell filed the present suit. St. Paul, McConnell, and Mid–Century filed cross-summary judgment motions. The St. Paul insurance policy provided coverage for "any other person who sustains bodily injury while occupying a motor vehicle with the consent of the named insured." St. Paul argued that McConnell was not covered by James Dart's insurance policy because she was not occupying the car with consent at the time of the accident. McConnell and Mid–Century argued that the No–Fault Act required the St. Paul insurance policy to cover McConnell because she had a good

faith belief that she had permission to occupy the car.

The trial court interpreted the No–Fault Act to mandate insurance coverage for individuals occupying a motor vehicle with a good faith belief that the driver has permission or authority to operate the vehicle even though the driver does not have actual authority. Thus, the trial court granted McConnell and Mid–Century's motions for summary judgment.[2] St. Paul appealed the trial court's ruling to the Colorado Court of Appeals.

The court of appeals reversed the trial court's order. *McConnell v. St. Paul Fire & Marine Ins. Co.*, 894 P.2d 11 (Colo.App. 1994). The court of appeals held that under the No–Fault Act an insurer may deny coverage to non-permissive users of automobiles, and thereby, to good faith passengers occupying the vehicle with the purported consent of a non-permissive user. *Id.* at 12.

■ We granted certiorari to determine whether the No–Fault Act requires St. Paul to extend coverage to a passenger who has a good faith belief that the driver has permission to operate the insured vehicle when in actuality the driver does not.[3] We hold that the No–Fault Act mandates coverage only for those who are occupying a motor vehicle with the consent of an insured. In this case, Brewer did not have permission to drive the vehicle and he could not provide consent to McConnell. Despite her good faith belief to the contrary, McConnell did not have the requisite consent necessary under the Act to entitle her to coverage.

1. McConnell was Brewer's supervisor at his place of employment. Brewer noted on his employment application that he did not have a current driver's license, and Brewer stated in deposition that he assumed McConnell was aware of that fact. McConnell denied knowing that Brewer was unlicensed in her deposition. We take the facts in the light most favorable to the plaintiff, and, for purposes of analysis of the summary judgment motion, assume that McConnell had no knowledge that Brewer was unlicensed.

2. McConnell and Mid–Century have settled with one another. Therefore, Mid–Century is no longer a party to this suit.

3. We granted certiorari on the following two issues:

Whether the court of appeals holding that an insurer of a motor vehicle driven without the owner's actual consent is not obligated to pay benefits under the No–Fault Act to an injured passenger who had no knowledge of the owner's lack of consent violates Colorado public policy and/or legislative intent.

Whether consent can be implied to extend to a good faith user of a motor vehicle under section 10–4–707(1)(c), 4A C.R.S. (1994).

## II.

In analyzing the coverage mandated by the No–Fault Act, it is first important to review the overall goals and structure of the Act. The purpose of the No–Fault Act, sections 10–4–701 to –725, 4A C.R.S. (1994 & 1995 Supp.), is to avoid inadequate compensation to victims of automobile accidents and to require registrants of this state to procure automobile insurance coverage. § 10–4–702, 4A C.R.S. (1994). To achieve these ends, the No–Fault Act requires every automobile owner to acquire a "complying policy" which provides the requisite amount of coverage mandated by the Act.[4] § 10–4–705, 4A C.R.S. (1994).

Under the No–Fault Act, a complying policy may provide more extensive coverage than that mandated. § 10–4–710, 4A C.R.S. (1995 Supp.). However, any clause of a policy that attempts to "dilute, condition, or limit statutorily mandated coverage" is void and unenforceable. *Meyer v. State Farm Mut. Auto Ins. Co.*, 689 P.2d 585, 589 (Colo.1984) (superseded by statute as stated in *Allstate Ins. Co. v. Feghali*, 814 P.2d 863, 865–66 (Colo. 1991)). The St. Paul insurance policy denied coverage to McConnell, a passenger occupying a motor vehicle with the good faith belief that the driver had permission. The issue in this case is whether that policy failed to provide the requisite coverage mandated by the Act.

The No–Fault Act specifically defines the class of individuals who must be provided coverage under complying automobile insurance policies. Section 10–4–707(1)(c) extends liability coverage to individuals who sustain bodily injury while occupying an insured vehicle with the consent of an insured.[5] Section 10–4–707(1)(c) states:

(1) The coverage described in section 10–4–706 shall be applicable to:

. . . .

(c) Accidental bodily injury arising out of accidents occurring within this state sustained by *any other person while occupying the described motor vehicle with the consent of the insured* or while a pedestrian if injured in an accident involving the described motor vehicle.

(Emphasis added.)[6] The No–Fault Act also contains a provision for allowing exclusion of certain individuals from coverage: The coverages described in section 10–4–706 may also be subject to exclusions where the injured person:

(a) Sustains injury caused by his own intentional act; or

(b) Is operating a motor vehicle as a converter without a good faith belief that he is legally entitled to operate or use such vehicle.

§ 10–4–712(2), 4A C.R.S. (1994).

### A.

McConnell contends that we should construe sections 10–4–707(1)(c) and 10–4–703(6) to mandate coverage for any passenger who has a good faith belief that she has consent to occupy the vehicle. She asserts that section 10–4–712(2) supports her position by authorizing exclusion from coverage only of individuals who do not have a good faith belief in their right to operate an automobile. We disagree.

When construing a statute, we must give full effect to the intent of the legislature. *Passamano v. Travelers Indem. Co.*, 882 P.2d 1312, 1318 (Colo.1994). It is our duty to interpret statutory terms in accordance with their plain and obvious meaning. *Bertrand v. Board of County Comm'rs,*

---

**4.** Section 10–4–703(2), 4A C.R.S. (1994), defines a complying policy as a "policy of insurance which provides the coverages and is subject to the terms and conditions required by this part 7, and is certified by the insurer and the insurer has filed a certification with the commissioner that such policy, contract, or endorsement conforms to Colorado law and any rules or regulations promulgated by the commissioner."

**5.** Section 10–4–707(1) also extends coverage to a named insured and a resident relative of the named insured. The named insured is usually the primary beneficiary under the policy to whom the policy is issued.

**6.** Section 10–4–703(6), 4A C.R.S. (1994), defines an insured as the named insured, a resident relative of the named insured, or any person using the described motor vehicle with the permission of the named insured.

872 P.2d 223, 228 (Colo.1994); *see* § 2–4–101, 1B C.R.S. (1980). When the language of a statute is clear and unambiguous, the court must apply the statute as written and need not resort to other interpretative rules of statutory construction. *Budget Rent–A–Car Corp. v. Martin*, 855 P.2d 1377, 1382 n. 9 (Colo.1993); *see* § 2–4–203(1)(c), 1B C.R.S. (1980).

■ The General Assembly intended to avoid inadequate compensation to victims of automobile accidents when it enacted the No–Fault Act. However, the General Assembly did not intend for the category of individuals covered under the No–Fault Act to be unlimited. *Budget Rent–A–Car Corp.*, 855 P.2d at 1382 n. 9.

■ Section 10–4–707(1)(c), by its plain terms, limits the category of those who must be covered under the No–Fault Act to those who are using the covered vehicle with the permission of an insured. Pursuant to section 10–4–703(6), an insured is a named insured, a resident relative of a named insured, or anyone using the covered vehicle with the permission of the named insured. The dictionary definition of the term consent is: "1: to give assent or approval: agree." *Merriam Webster's Collegiate Dictionary* 246 (10th ed. 1995). In order for an individual to have consent, one with authority must agree to or approve of the proposed action in some manner.[7] *See also* 7 Am.Jur.2d *Automobile Insurance* § 254 (1980) ("The word 'permission' or 'consent' connotes the power to grant or withhold it."). Thus, the statutory scheme mandates that an individual with authority, as defined in section 10–4–703(6), must grant consent to the passenger in order for the passenger to be eligible for insurance coverage pursuant to section 10–4–707(1)(c).

Given this statutory language, the status of a passenger is necessarily dependent upon the status of the driver. If the driver does not have permission to use the vehicle, the driver has no authority to consent to the passenger's use. The passenger's good faith belief that the driver has such authority does not change the driver's status.

■ Section 10–4–712(2) does not compel a different conclusion; rather, it merely provides specific examples of the sort of individuals who may be excluded from coverage under the No–Fault Act. It does not suggest that all individuals must be covered unless excluded. In fact, section 10–4–712(1) specifically authorizes insurers to subject the coverage described in section 10–4–706 to any conditions or exclusions that are not inconsistent with the Act. Thus, the General Assembly contemplated that insurers could design insurance policies that efficiently and effectively provide coverage under the No–Fault Act, as long as the policies do not dilute the coverage mandated by sections 10–4–706 and 10–4–707.

■ Thus, we hold that insurers may limit coverage to those who are occupying a car with the permission of the insured and refuse coverage to non-permissive users. The court of appeals reached the same conclusion in *Winscom v. Garza*, 843 P.2d 126 (Colo.App. 1992). In *Winscom*, the named insured forbade their daughter's boyfriend from using their car. Despite this prohibition, the boyfriend drove the car and collided with a car driven by Ward Winscom. 843 P.2d at 127. Winscom attempted to collect damages for his injuries pursuant to the insured's automobile liability insurance policy issued by Allstate Insurance Company. Allstate denied Winscom recovery because the boyfriend was not using the covered vehicle with the permission of the named insured at the time of the accident.[8] *Id.* at 128. The court of appeals ruled that Winscom could not recover for his injuries. It held that the plain import of section 10–4–703(6) is that "an

---

7. As there is no dispute in this case that Brewer did not have permission or consent to use the insured vehicle and therefore, could not confer consent on McConnell, we do not consider what kinds of actions or circumstances would confer consent upon a passenger or user of the vehicle under the No–Fault Act.

8. The insurance policy stated:

The following persons are insured under this part:
3. Any other person with respect to the owned automobile, provided the use thereof is with the permission of the named insured and within the scope of such permission.
*Winscom*, 843 P.2d at 128.

insurer is not required to extend coverage to any person who uses the vehicle without the permission of the named insured." *Id.*

■ We agree with the holding in *Winscom* that an insurer may exclude from coverage a driver who does not have the consent of the insured.[9] Similarly then, under the plain language of sections 10–4–707(1)(c) and 10–4–703(6), an insurer may exclude from coverage an occupant who does not have the consent of an insured. The consent necessary to qualify a passenger for coverage need not necessarily be given by the named insured, but must come from someone who has permission to use the vehicle. In this case, Brewer had no authority to give McConnell consent to occupy the vehicle. Her good faith belief that he had permission cannot somehow elevate him from a converter to an insured. Therefore, under the terms of the No–Fault Act and the St. Paul insurance policy, McConnell is not entitled to recover insurance benefits.

### B.

■ In addition, McConnell argues that the consent referenced in section 10–4–707(1)(c) is not actual consent. Rather, according to McConnell, the named insured need only consent to the vehicle being driven on the road by anyone other than himself or herself. Once this consent is given, insurance coverage inures to anyone who uses or occupies the vehicle. McConnell draws support for this conclusion from *Bukulmez v. Hertz Corp.*, 710 P.2d 1117 (Colo.App.1985), *reversed in part sub nom., Blue Cross v.*

*Bukulmez*, 736 P.2d 834 (Colo.1987). Using this reasoning, McConnell argues that because Dart gave initial consent for his daughter's use of the vehicle, any subsequent change in the character or scope of the use of the vehicle was permissive.[10] We do not read either the No–Fault Act or *Bukulmez* as supporting such a broad contention.

■ As explained above, section 10–4–707(1)(c) requires an occupier to have consent from one authorized to give such consent in order to qualify for mandatory coverage under the Act.[11] *See supra* p. 112. This consent must come from the named insured, a resident relative of the named insured, or the named insured's permittee. A named insured may allow a permissive user a wide scope of discretion, including the authority to permit others to ride in or use the vehicle.

However, this certainly does not mean that if a named insured permits one person to use the vehicle, he or she thereby permits everyone to use the vehicle. Where a named insured expressly forbids an individual to use his or her car, we fail to see how permitting another to use the car would affect this prohibition.

McConnell seems to argue that although Brewer did not have consent to use the car, she had consent to occupy the car because Dart allowed his daughter primary use of the car. However, a passenger's right to use the car is necessarily dependent on the driver's right to use the car. It is inconceivable that an owner would grant permission for a passenger to ride in a car with someone whom

---

9. We reached the same conclusion prior to enactment of the No–Fault Act. *See Ewing v. Colorado Farm Mut. Casualty Co.*, 133 Colo. 447, 296 P.2d 1040 (1956); *Royal Indem. Co. v. Markley*, 116 Colo. 84, 178 P.2d 672 (1947).

10. There are some jurisdictions that have adopted a broad "initial permission" rule which provides that, once an insured grants permission to someone else to use a vehicle, any subsequent use of the vehicle by that person is deemed to be permissive. *See, e.g., Waits v. Indemnity Ins. Co.*, 215 La. 349, 40 So.2d 746 (1949); *Matits v. Nationwide Mut. Ins. Co.*, 33 N.J. 488, 166 A.2d 345 (1960). Even those jurisdictions do not extend the initial permission rule to those, like Brewer, who use the car after being expressly

prohibited from doing so. *See, e.g., Norton v. Lewis*, 623 So.2d 874 (La.1993); *Verriest v. INA Underwriters Ins.*, 142 N.J. 401, 662 A.2d 967 (1995). Thus, McConnell's reliance on this rule is misplaced. We do not need to reach the question of whether the initial permission rule would have permitted Jean Dart to give Brewer consent to use the vehicle contrary to the named insured's express prohibition, because the facts are undisputed that she did not offer that consent.

11. We emphasize that an insurer may provide more extensive coverage than that mandated by the Act. We are concerned here only with the minimum amount of coverage allowed by the Act.

the owner has prohibited from driving the vehicle. Yet, this is exactly the situation McConnell proposes. *Bukulmez* fails to buttress McConnell's argument. In *Bukulmez*, a rental car company rented a car to James Hannon who in turn allowed his eighteen year old son to drive the vehicle. 710 P.2d at 1119. The son was in an accident and the plaintiff, a passenger in the car with the son, filed suit against the rental company to recover for her injuries. The rental car company argued it was not responsible for any benefits due the plaintiff because Hannon had breached the rental contract by allowing his son to drive the car.[12] *Id.*

The court of appeals disagreed. Relying on section 10–4–705, 4A C.R.S. (1994), the court of appeals concluded that the No–Fault Act took precedence over the terms of the rental contract, and that the son was driving the car with the consent of a named insured, his father. *Id.* at 1120. Hertz did not argue in *Bukulmez* that the plaintiff should be denied coverage because the son was a non-permissive driver of the car. Thus, the son was not a converter of the vehicle and the issue of whether the No–Fault Act allows insurers to preclude coverage to non-permissive users was not raised.

### III.

We hold that section 10–4–707(1)(c) mandates coverage under the No–Fault Act only for a passenger who is occupying a car with the consent of an insured. Section 10–4–703(6) includes within the definition of an insured an individual using a car with the permission of a named insured. Thus, a passenger must derive consent from the named insured or one using the car with the permission of the named insured. In this case, Brewer, the driver of the car, was specifically instructed not to use the car. Therefore, he was using the car as a converter. Brewer is allowed to be excluded from coverage under the terms of the No–Fault Act. Moreover, Brewer could not confer on McConnell the requisite consent required under the No–Fault Act. In this situation, McConnell's good faith belief that she had consent to use the vehicle does not change

her status. Thus, the No–Fault Act does not require coverage for McConnell and St. Paul was allowed to exclude McConnell from coverage under the terms of its insurance policy.

Therefore, we affirm the judgment of the court of appeals.

---

**12.** The rental contract prohibited anyone under the age of twenty-one from driving the car.