Brian **RAITZ** and Tristan Naranjo,
Plaintiffs–Appellees,

v.

**STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY,**
Defendant–Appellant.

No. 96CA0788.

Colorado Court of Appeals,
Div. IV.

April 3, 1997.

Rehearing Denied May 8, 1997.

Certiorari Granted Oct. 20, 1997.

Greenstein and Tyler, P.C., Cameron W. Tyler, Bruce W. Sarbaugh, Boulder, for Plaintiffs–Appellees.

Anderson, Campbell and Laugesen, P.C., Robert L. McGahey, Jr., Robert O. Kristufek, Denver, for Defendant–Appellant.

Opinion by Judge HUME.

State Farm Mutual Automobile Insurance Company appeals from the summary judgment entered in favor of plaintiffs, Brian Raitz and Tristan Naranjo, concluding that State Farm was required to pay personal injury protection (PIP) benefits on behalf of Naranjo. We reverse and remand with instructions that summary judgment be entered in favor of State Farm.

The following facts are not disputed. Naranjo was injured when he fell off the roof of a van being driven by Raitz. The van was insured by State Farm, and was owned by James E. and Margaret Dahlin (the Dahlins) who were also designated as the named insureds under the State Farm policy.

Kristin Dahlin is the Dahlins' daughter who, at all relevant times, resided at the Dahlins' home. Before the accident at issue, the Dahlins had told Kristin more than once that she was not to permit anyone other than family members to drive the van.

On October 24, 1992, while Kristin was driving the van, her boyfriend, Alan Angelopulous, and then another passenger, each climbed through the van's back doors and onto its roof. In both instances, Kristin stopped the vehicle, "yelled at" the individual, and told him not to do it again.

On the night of October 24, 1992, Kristin, Angelopulous, and several other friends attended a party, during which Kristin consumed alcohol and eventually "passed out." Thereafter, Angelopulous awakened Kristin and asked for the keys to the van so that he and some others could drive to get food. At that time, Angelopulous was not sure who would be going with him in the van. Although Kristin had no recollection of this conversation, Angelopulous testified that she gave him the keys. Angelopulous also recalled that Naranjo asked to go in the van

after he learned Angelopulous had obtained the keys from Kristin.

Angelopulous did not drive but, instead, allowed Naranjo to drive. While Naranjo drove, Angelopulous, Raitz, and another person rode on the roof of the van. Thereafter, Angelopulous and Naranjo rode on the van's roof and Raitz drove. While Raitz was driving, Naranjo fell from the roof and was seriously injured.

Raitz instituted this action as an assignee of Naranjo seeking payment of PIP benefits on Naranjo's behalf. Both sides moved for summary judgment.

The trial court granted plaintiffs' motion for summary judgment. It concluded that Angelopulous was an "insured" under the policy and also apparently determined that this status authorized Angelopulous to allow others to drive the van. The court also concluded that coverage existed because the Dahlins knew the vehicle would be operated on the public highways and that Naranjo, therefore, occupied the vehicle with their permission. In denying State Farm's motion for reconsideration, the trial court also referred to what it considered a valid "chain of consent" from the Dahlins to Kristin to Angelopulous to Raitz.

I.

State Farm contends that the trial court erred in concluding that Naranjo was entitled to receive PIP benefits under either the insurance policy or the Colorado Auto Accident Reparations Act, § 10–4–701, et seq., C.R.S. (1994 Repl.Vol. 4A) (No Fault Act). We agree.

Initially, we note that neither party argues that the relevant coverage provided under the insurance policy differs from the coverage required by the No Fault Act. Accordingly, we focus on the coverage mandated by that statute.

In passing the No Fault Act, the General Assembly intended to avoid inadequate compensation to victims of automobile accidents. However, it did not intend for the category of individuals covered to be unlimited. *Budget Rent–A–Car Corp. v. Martin*, 855 P.2d 1377 (Colo.1993).

■ ■ The No Fault Act specifically defines a class of individuals who must be provided coverage under complying automobile insurance policies. Section 10–4–707(1)(c), C.R.S. (1994 Repl.Vol. 4A) extends liability coverage to individuals who sustain bodily injury while occupying an insured vehicle with the consent of an insured. *See McConnell v. St. Paul Fire & Marine Insurance Co.*, 906 P.2d 109 (Colo.1995). Section 10–4–703(6), C.R.S. (1994 Repl.Vol. 4A) defines an "insured" to include (1) the named insured; (2) relatives of the named insured who reside in the same household as the named insured; or (3) any person using the described motor vehicle with the permission of the named insured. The plain import of § 10–4–703(6) is that an insurer is not required to extend coverage to any person who uses the vehicle without the permission of the named insured. *Winscom v. Garza*, 843 P.2d 126 (Colo.App.1992).

■ Thus, the statutory scheme mandates that an individual with authority, as defined in § 10–4–703(6), must grant consent to the passenger in order for the passenger to be eligible for insurance coverage pursuant to § 10–4–707(1)(c). *McConnell v. St. Paul Fire & Marine Insurance Co., supra.*

In order for an individual to have the power to consent, one with authority must agree to or approve of the proposed action in some manner. *McConnell v. St. Paul Fire & Marine Insurance Co., supra.*

■ A named insured may allow a permissive user a wide scope of discretion, including the authority to permit others to ride in or use the vehicle. However, this does not mean that if the named insured permits one person to operate the vehicle he or she thereby permits everyone to operate the vehicle. *McConnell v. St. Paul Fire & Marine Insurance Co., supra.*

Finally, based upon the statutory language of §§ 10–4–703(6) and 10–4–707(1)(c):

> [T]he status of a passenger is necessarily dependent upon the status of the driver. If the driver does not have permission to use the vehicle, the driver has no authority to consent to the passenger's use.

*McConnell v. St. Paul Fire & Marine Insurance Co., supra,* 906 P.2d at 113.

■ Applying the above principles to the undisputed facts of this case compels the conclusion that Naranjo was not covered under the No Fault Act. First, it is clear that Naranjo is neither a named insured nor a relative residing in the household of a named insured. *See* §§ 10–4–707(1)(a) and 10–4–707(1)(b), C.R.S. (1994 Repl.Vol. 4A). Thus, in order to be covered, Naranjo must have been occupying the van with the consent of either the named insured (the Dahlins), a resident relative of the named insured (Kristin), or any person using the van with the permission of the Dahlins. *See* § 10–4–707(1)(c).

There is no evidence in the record that the Dahlins consented to Naranjo's use of the van in any manner. Nor is there any evidence that Kristin permitted Naranjo either to operate the van or to occupy it as a passenger while Raitz was driving. Under these circumstances, Naranjo's use as a passenger was "necessarily dependent" on the status of the driver, Raitz, who had no authority to drive. *See McConnell v. St. Paul Fire & Marine Insurance Co., supra.*

■ Finally, because Angelopulous was not a named insured, a resident relative of a named insured, or a person using the vehicle with the permission of the named insureds, he could not provide valid consent for Naranjo to occupy the van or for Raitz to drive it. *See* § 10–4–703(6).

The trial court apparently concluded that Angelopulous, as a permittee of Kristin, was an "insured" and was, therefore, also entitled to allow others to drive or ride as a passenger in the van. This conclusion, however, is not sustainable.

■ First, Angelopulous' status as an "insured" is questionable given that neither the Dahlins nor Kristin consented to his permitting Raitz to drive the van. Moreover, even if Angelopulous had the status of a permittee, such status did not also confer upon him the authority to permit others to drive the van. Hence, since Angelopulous did not have authority to allow Raitz to drive the van, Raitz was an unauthorized driver at the time Nar-

anjo was injured. *See McConnell v. St. Paul Fire & Marine Insurance Co., supra.*

Finally, neither *Wiglesworth v. Farmers Insurance Exchange,* 917 P.2d 288 (Colo. 1996) nor *Bukulmez v. Hertz Corp.,* 710 P.2d 1117 (Colo.App.1985), *reversed in part on other grounds sub nom., Blue Cross v. Bukulmez,* 736 P.2d 834 (Colo.1987) requires a different result.

Unlike the situation presented in *Bukulmez,* in which the driver had authority from his father to operate the vehicle, here Raitz, the driver, had no such authority from any person lawfully entitled to give it. Indeed, in *Bukulmez,* "the issue of whether the No Fault Act allows insurers to preclude coverage to nonpermissive users was not raised." *McConnell v. St. Paul Fire & Marine Insurance Co., supra,* 906 P.2d at 115.

In *Wiglesworth,* the supreme court adopted the "initial permission" rule, as follows:

> [ I]f the original taking [of the vehicle] was with the insured's consent, every act subsequent thereto while the [borrower] is driving the car is held to be within the insured's permission ... under the [policy].

 *Wiglesworth v. Farmers Insurance Exchange, supra,* 917 P.2d at 291. Thus, the initial permission rule pertains to the scope of use by the *initial borrower* and provides that subsequent changes in the character and scope of *that borrower's* use, short of theft or conversion, do not require additional consent. Indeed, the court reiterated this limitation to the rule's application when it stated:

> [W]e interpret the Act to state that all that is required to confer coverage on the driver of the vehicle is initial permission from the primary insured to use the vehicle.

*Wiglesworth v. Farmers Insurance Exchange, supra,* 917 P.2d at 292.

We do not read *Wiglesworth* as giving an initial borrower unfettered authority to allow third parties to use or drive the vehicle and be considered insureds. In our view, the facts presented here are more analogous to the circumstances considered in *McConnell v. St. Paul Fire & Marine Insurance Co., supra,* than those considered in *Wiglesworth*

*v. Farmers Insurance Exchange, supra.* Here, there were no disputed issues of material fact as to Naranjo's not being an insured entitled to receive PIP benefits either under the policy or the No Fault Act. Accordingly, the trial court erred in entering summary judgment in favor of plaintiffs.

Based upon our resolution of this issue, we need not address State Farm's additional contention that the trial court erred in concluding that Naranjo was the real party in interest.

The judgment is reversed and the cause is remanded with directions that the trial court enter summary judgment in favor of State Farm.

STERNBERG, C.J., and KAPELKE, J., concur.