**METROPOLITAN PROPERTY AND CASUALTY INSURANCE COMPANY, Petitioner,**

v.

**HERTZ CORPORATION, Respondent.**

No. 98SC243.

Supreme Court of Colorado,
En Banc.

June 14, 1999.

Kane, Donley & Johnson, P.C., Jack E. Donley, Colorado Springs, Colorado, Attorneys for Petitioner,

Anstine, Hill, Richards & Simpson, Ronald C. Hill, Michael S. Simpson, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to determine whether the Colorado Auto Accident Reparations Act, sections 10–4–701 to 726, 3 C.R.S. (1997), requires that a self-insured automobile rental agency provide coverage to a driver who was not authorized by the rental agency but was allowed to drive by the lessee. We review the court of appeal's ruling that a driver of a rental car who was unauthorized under the terms of the rental agreement did not have legal permission to drive the car for the purposes of insurance coverage. *See Metropolitan Cas. Ins. Co. v. Hertz,* 967 P.2d 175, 176 (Colo.App.1998). The court of appeals agreed with the trial court's conclusion that the rental company had no obligation to the driver pursuant to the company's insurance policy and the Colorado Automobile Accident Reparations Act. Thus, the court of appeals affirmed the trial court's grant of summary judgment in favor of the rental company.

We hold that the driver was a "permissive user" because he had permission from the insured lessee and that the self-insured rental company is responsible for providing coverage consistent with the Colorado Auto Accident Reparations Act. We reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

## I.

On June 5, 1994, Micah Bachman (Bachman) rented an automobile from Hertz Rental Company (Hertz). The rental agreement provided that the lessee could not permit anyone to drive the car unless authorized by Hertz. Bachman loaned the automobile to Dale Rinkenberger (Rinkenberger). On June 12, 1994, Rinkenberger was involved in an accident while driving the rental car and was subsequently sued. His insurer, Metropolitan Casualty Insurance Company (Metropolitan), defended and indemnified him. This dispute arose when Metropolitan requested contribution from Hertz for the defense and indemnification of Rinkenberger as a result of his liability for the accident.

Hertz and Metropolitan filed cross motions for summary judgment. The motions for summary judgment dealt with two issues: whether Rinkenberger had permission to drive the automobile and whether, if Rinkenberger did have permission to drive the car, Hertz's "other insurance clause" shifted primary coverage to Metropolitan. The trial court found in favor of Hertz, and Metropolitan appealed to the court of appeals. The court of appeals affirmed the trial court on the issue of permissive use, rendering the "other insurance clause" issue moot. The decision of the court of appeals was made without the benefit of our subsequently announced decision in *Raitz v. State Farm Mutual Auto Insurance. See* 960 P.2d 1179 (Colo.1998).

We now reverse the court of appeals. We hold that Rinkenberger was a permissive user because he had permission from an insured and no knowledge that the owner of the vehicle had prohibited his use of the car. Accordingly, Hertz is required by the Colorado Auto Accident Reparations Act to provide automobile insurance coverage for the accident.

## II.

Resolution of this issue requires an analysis of the Colorado Auto Accident Reparations Act (No–Fault Act) and recent case law dealing with permissive use.

## A.

Although the Colorado Auto Accident Reparations Act is known as the No–Fault Act, it mandates both no-fault and liability insurance for automobiles. *See Allstate Ins. Co. v. Avis Rent–A–Car Sys., Inc.,* 947 P.2d 341, 344 (Colo.1997). The no-fault coverage is known as Personal Injury Protection (PIP) and is provided to the injured party by his or her own insurance company regardless of fault. *See id.* In addition to PIP coverage, the No–Fault Act mandates minimum coverage for tort liability for bodily injury or death and for property damage arising from

the use of a motor vehicle. *See id.* The liability coverage mandated by the No–Fault Act provides personal injury compensation based on the fault of the tortfeasor when PIP benefits are inadequate to compensate for the loss. *See id.*

The No–Fault Act provides that "every owner of a motor vehicle who operates the motor vehicle on the public highways of this state or who knowingly permits [such] operation ... shall have in full force and effect a complying policy under the terms of [the Act]." § 10–4–705(1), 3 C.R.S. (1998). The purpose of the No–Fault Act, as proffered in the legislative declaration is to

> "avoid inadequate compensation to victims of automobile accidents; to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or use of such vehicles and also providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles.

§ 10–4–702, 3 C.R.S. (1998).

Pursuant to section 10–4–712(2) coverage may be excluded where the injured person (a) sustains injury caused by his or her own intentional act; or (b) is operating a motor vehicle as a converter without a good faith belief that he or she is legally entitled to operate such vehicle. *See* § 10–4–712(2), 3 C.R.S. (1998).

### B.

■ Automobile insurers may exclude drivers and occupants who do not have the consent of the insured to use the vehicle. *See McConnell v. St. Paul Fire & Marine Ins. Co.,* 906 P.2d 109, 114 (Colo.1995). The No–Fault Act defines an "insured" as "the named insured, relatives of the named insured who reside in the same household as the named insured, or any person using the described motor vehicle with the permission of the named insured." § 10–4–703(6), 3 C.R.S. (1998). The permission necessary to qualify a driver or passenger for coverage under the No–Fault Act need not necessarily be given directly by the named insured, but must come from someone who has permis-

sion to use the vehicle. *See McConnell,* 906 P.2d at 114.

In *Raitz,* the named insureds gave their daughter permission to drive their van. In spite of the fact that they admonished their daughter not to allow others to drive the vehicle, she gave her boyfriend permission to drive the van. *See* 960 P.2d at 1182–83. The boyfriend then gave Raitz permission to drive. Subsequently, Raitz crashed the car, causing serious injury to one of the passengers. *See id.*

■ In *Raitz* we held that, pursuant to the initial permission rule, once a named insured permits another to drive the insured vehicle on public highways, the No–Fault Act extends coverage to subsequent permittees. *See id.* at 1186. Such a permittee is an "insured" for purposes of the No–Fault Act because, by virtue of the chain of consent emanating from the named insured, she has implied permission from the named insured to use the vehicle. *See id.* Thus, despite the fact that the daughter had violated the insured's explicit instructions, we concluded that Raitz's use was "permitted" for purposes of the No–Fault Act. *See id.* Similarly, in the present case, even though the rental agreement with Bachman did not authorize Rickenberger to use the vehicle, his use was "permitted" by Bachman for purposes of the No–Fault Act.

Hertz claims that such a ruling is inconsistent with our decision in *McConnell v. St. Paul Fire & Marine Ins. Co. See* 906 P.2d at 111. We do not agree. In *McConnell,* the driver of the insured vehicle knew that both the named insured as well as the initial borrower had prohibited him from driving the vehicle. *See id.* Thus, we rejected the argument that the insured consented to the vehicle being driven by anyone because he had consented to the car being driven by the initial permittee. *See* 906 P.2d at 110–11.

Unlike the driver in the case before us now, the driver in *McConnell* was aware that the named insured and the initial permittee had expressly forbidden him to drive the car. *See id.* at 111. The concept of implied permission from the insured owner is inconsistent with the actual knowledge that such permission has been expressly denied. Thus,

we did not consider implied permission in *McConnell,* but determined that the driver operated the vehicle as a converter without a good faith belief that he was entitled to do so. Pursuant to section 10–4–712(2) the driver in *McConnell* was excluded from coverage. *See id.* at 114. *McConnell* held that persons are not "insureds" when they have actual knowledge that they do not have permission to use the vehicle. *See Raitz,* 960 P.2d at 1186. Because there is no evidence in the record that Rinkenberger knew Hertz had forbidden him to drive the rental car, *McConnell* does not exclude him from coverage under the No–Fault Act.

### III.

■ Hertz argues that Bachman signed a contract agreeing not to permit other drivers to use the car. It contends that because Bachman did not have the authority to consent to anyone else's use of the car, Rickenberger could not have been a permissive user. However, implied permission may exist even when the named insured has told the initial borrower not to allow others to use the vehicle. *See id.* at 1187.

■ We have consistently held that it is the subsequent permittee's knowledge, rather than the initial permittee's knowledge, that is the crucial factor in determining whether a driver is a permissive user. *See Raitz,* 960 P.2d at 1186. Implied permission is considered from the perspective of the permittee, and exists as long as the permittee does not know of the denial of actual permission from the owner.

In both *Raitz* and *McConnell,* the driver's knowledge was the pivotal consideration. Although *Raitz* had not been announced when the parties in the present case filed their motions for summary judgment, we applied the same reasoning there as we did in *McConnell.* Thus, when the summary judgment motions were filed, evidence that Rinkenberger had knowledge that Hertz had prohibited his use of the rental vehicle would have made him a converter.

There is nothing in the record indicating that Rinkenberger knowingly violated Hertz's warnings. Hertz did not provide any evidence that would tend to prove that it had communicated to Rinkenberger that he was prohibited from driving the rental vehicle or that Rinkenberger had been aware of such a prohibition. Absent any suggestion that evidence exists to the contrary, Rinkenberger was a permissive driver, for purposes of summary judgment, based on the evidence that he had permission from the lessee.

■ Hertz also argues that the initial permission rule pronounced in *Raitz* is only applicable to PIP and does not apply to liability coverage. Hertz contends that permissive use for purposes of liability coverage is still controlled by *Ewing v. Colorado Farm Mutual Casualty Co. See* 133 Colo. 447, 452, 296 P.2d 1040, 1043 (1956). In *Ewing,* we stated that general permission to use an automobile does not carry authority to let someone else use the automobile. *See id.* However, *Raitz* noted that *Ewing* was no longer controlling on the meaning of permissive use. *See Raitz,* 960 P.2d at 1190 n. 10.

In *Raitz* we explained that the statement in *Ewing* was dicta. *See id. Ewing* concerned an action against an automobile liability insurer for satisfaction of judgment. *See* 133 Colo. at 448, 296 P.2d at 1041. We held that an insurer is not liable on any judgment against an insured if it has no reasonable opportunity to defend itself. *See id.* at 452, 296 P.2d at 1043. We addressed permissive use in *Ewing* only because the trial court found that there was no evidence that the driver of the automobile was driving with the permission of the insured owner. *See id.* Because permissive use was not central to the holding of the case, the language in *Ewing* concerning such use has no precedential value.

In addition to explaining that the statement in *Ewing* was dicta, we found, more importantly, that *Ewing* was decided prior to the enactment of the No–Fault Act and did not take into account the policy considerations set forth therein. *See Raitz,* 960 P.2d at 1190 n. 10. The legislature has clearly stated that the purpose of the No–Fault Act is to avoid inadequate compensation to victims of automobile accidents. *See* § 10–4–702, 3 C.R.S. (1998). The restrictive interpretation of permissive use stated in *Ewing,* if applied,

would hinder such a purpose. Because we give full effect to the intent of the legislature when construing a statute, we found that the language in *Ewing* was not controlling. *See Raitz*, 960 P.2d at 1190 n. 10.

Hertz attempts to limit our discussion of *Ewing* in *Raitz*, asserting that the reforms envisioned by the No–Fault Act do not apply to liability coverage. Hertz claims that the remedial nature of the No–Fault Act is concerned only with Personal Injury Protection and therefore its enactment and the permissive use rule pronounced in *Raitz* does not affect disputes concerning liability coverage.

■ In *Raitz* we stated, "*Ewing* is no longer controlling on the meaning of 'permissive use' and like phrases in no-fault provisions of automobile insurance policies." *Raitz*, 960 P.2d at 1190 n. 10. Hertz asserts that this language implies that the fault-based provisions of the Act are still controlled by *Ewing*. This interpretation is incorrect. The No–Fault Act is incorporated as part of every insurance policy. *See Marquez v. Prudential Property and Cas. Ins. Co.*, 620 P.2d 29, 33 (Colo.1980). Therefore the phrase "no-fault provisions of automobile insurance policies" refers to the provisions of insurance policies that derive from the No–Fault Act. The No–Fault Act mandates both no-fault PIP and fault-based liability coverage. Accordingly, our language in *Raitz* means that *Ewing* is no longer controlling on the meaning of permissive use with regard to any coverage in an insurance policy that reflects the mandates of the Colorado Auto Accident Reparations Act.

Contrary to Hertz's contention, the No–Fault Act is a statutory scheme that addresses all aspects of insurance policies. It was enacted to remedy issues of inadequate compensation to victims of automobile accidents by requiring minimum no-fault PIP insurance, as well as legal liability coverage. *See* § 10–4–706(1)(a), 3 C.R.S. (1998). Both liability and no fault personal injury protection insurance play a role in effectuation of the legislative purpose. *See Marquez*, 620 P.2d at 33. Drawing a distinction between PIP and liability coverage regarding permissive use would do violence to the broad purposes of the No–Fault Act.[1] The construction Hertz suggests would unnecessarily limit coverage, thereby impeding rather than facilitating the purposes of the No–Fault Act. We have said on several occasions that the No–Fault Act is to be liberally construed in order to further its remedial and beneficent purposes. *See Travelers*, 191 Colo. at 283, 552 P.2d at 304. In order to further the policy considerations of the No–Fault Act, and provide adequate compensation to victims of automobile accidents, both PIP and liability coverage is included under the coverage provided for permissive users. Accordingly, we reject Hertz's argument.

### IV.

In sum, if a driver is given permission from an insured to operate a vehicle, and has no knowledge that she has been forbidden to drive the vehicle by the vehicle's owner, the driver is a permissive user. Accordingly, the owner's insurer is responsible for providing coverage consistent with the Colorado Auto Accident Reparations Act. Therefore, we reverse the judgment of the court of appeals and remand for further proceedings consistent with this opinion.

1. PIP insurance and legal liability insurance have been treated differently where an owner's and an operator's insurance companies are attempting to determine whose coverage should be primary. *See Allstate*, 947 P.2d at 344; *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 283, 552 P.2d 300, 304 (1976). In *Travelers* we held that where an accident involves a driver who is not the owner of the vehicle or an employee of the owner, section 10–4–707(4) required the operator's PIP coverage always to be primary regardless of the existence of any other coverage. *See* 191 Colo. at 283, 552 P.2d at 304. We found that this primary coverage rule could not be extended by implication to every coverage that may be included in the policies. *See id.* Unlike the issue of permissive use, determining primary coverage does not threaten to reduce or eliminate compensation to the victims of automobile accidents.