Grafton
No. 2004-050

PROGRESSIVE NORTHERN INSURANCE COMPANY

v.

CONCORD GENERAL MUTUAL INSURANCE COMPANY & a.

Argued: September 23, 2004
Opinion Issued: January 10, 2005

650

*Wadleigh, Starr & Peters, P.L.L.C.*, of Manchester (*John A. Lassey* on the brief and orally), for the plaintiff.

*Wiggin & Nourie, P.A.*, of Manchester (*Gordon A. Rehnborg, Jr.* and *Mary Ann Dempsey* on the brief, and *Mr. Rehnborg* orally), for the defendant.

Jeremy Heath, *pro se*, filed no brief.

Christina Brown, *pro se*, filed no brief.

*Lara J. Saffo*, of Orford, for defendant Gary Collins, filed no brief.

BRODERICK, C.J. The plaintiff, Progressive Northern Insurance Company (Progressive), appeals, and defendant Concord General Mutual Insurance Company (Concord General) cross-appeals, an order of the Superior Court (*Burling*, J.) partially granting their respective motions for summary judgment. The trial court concluded that an exclusion in the Concord General insurance policy eliminated liability coverage for an unlicensed driver of the insured vehicle, who was allegedly at fault for a motor vehicle accident, but that the New Hampshire Accidents and Financial Responsibility Act (hereinafter referred to as Financial Responsibility Act or law), RSA chapter 264, required Concord General to provide the unlicensed driver with insurance coverage up to the maximum statutory limits. *See* RSA 264:18, VI (2004). We affirm in part, vacate in part and remand.

The following facts are undisputed. In June 2002, Jeremy Heath was operating a car in Lebanon when he was involved in an accident with a motorcycle driven by Gary Collins. Heath did not have a valid driver's license at the time and was not the owner of the car. Heath's girlfriend, Christina Brown, was a passenger in the car and had given him permission to drive. While Brown was the primary operator of the vehicle, her step-father, John Chestnut, was its registered owner, and had instructed Brown not to let anyone else drive it. Concord General provided liability insurance for the car operated by Heath, with Chestnut as the named insured. The motorcycle was insured by Progressive.

In December 2002, Collins filed suit against both Heath and Brown, seeking damages for his injuries. Progressive then filed a petition for declaratory judgment, naming Concord General, Collins, Brown and Heath as respondents, and sought an order that Concord General was required to defend and indemnify Heath and Brown for the Collins lawsuit, and that it had no obligation to provide uninsured motorist coverage to Collins. In its answer, Concord General contended that because Heath did not hold a valid driver's license at the time of the accident, an exclusion under its policy precluded coverage for him.

Progressive moved for summary judgment on the bases that it owed no obligation to provide uninsured motorist coverage for the accident, that Concord General was obligated to defend and indemnify Heath and Brown, and that even if the Concord General policy excluded Heath from coverage, Concord General was required to provide coverage under the Financial Responsibility Act, RSA 264:18, VI. Concord General objected, and filed a cross-motion for summary judgment, seeking a ruling that it owed no duty to defend, indemnify or otherwise provide Heath with insurance coverage. The trial court partially granted both motions, ruling that an exclusion under the Concord General policy operated to bar liability coverage for Heath but that "Brown's implied consent . . . [made] Heath eligible for limited coverage up to the maximum statutory limits provided under [the Financial Responsibility Act]." Both parties appealed.

We review *de novo* the trial court's application of the law to the facts in its summary judgment ruling. *Iannelli v. Burger King Corp.*, 145 N.H. 190, 193 (2000). All evidence presented in the record, as well as any inferences reasonably drawn therefrom, must be considered in the light most favorable to the party opposing summary judgment. *Id.* If our review of that evidence discloses no genuine issue of material fact and if the moving party is entitled to judgment as a matter of law, then we will affirm the grant of summary judgment. *Id.* at 193.

I

We first consider the exclusion at issue under the Concord General policy. It states: "We do not provide Liability Coverage for any 'insured' . . . [u]sing a vehicle without a reasonable belief that that 'insured' is entitled to do so" (entitlement exclusion). The trial court determined that under this exclusion, Heath could not have had a reasonable belief that he was entitled to use the car, despite Brown's permission, because he knew he did not have a valid driver's license, and thus knew he lacked lawful authority to operate any motor vehicle upon a public way. We agree.

Progressive argues that the so-called entitlement exclusion is ambiguous because the term "entitled" is reasonably susceptible of more than one meaning, and thus the policy must be interpreted in favor of providing coverage. It urges us to follow the reasoning of the Georgia Supreme Court in *Hurst v. Grange Mutual Casualty Co.*, 470 S.E.2d 659, 663 (Ga. 1996), where a similar exclusion was interpreted to have at least three different meanings:

that the user must be authorized by law to drive in order to reasonably believe he is entitled to use a vehicle; that the user must have the consent of the owner or apparent owner in order to reasonably believe he is entitled to use the vehicle; or, that the user must have both consent and legal authorization in order to be entitled to use the vehicle.

Concord General contends, however, that no ambiguity exists because an unlicensed driver who knows he lacks a valid driver's license cannot as a matter of law reasonably believe he is entitled to use a motor vehicle upon a public way, regardless of consent given by the owner or apparent owner of the vehicle.

██ ██ "The interpretation of insurance policy language is a question of law for this court to decide." *Godbout v. Lloyd's Ins. Syndicates*, 150 N.H. 103, 105 (2003). Insurers are free to contractually limit the extent of their liability through use of a policy exclusion, *Curtis v. Guaranty Trust Life Ins. Co.*, 132 N.H. 337, 340 (1989), provided it violates no statutory provision, *see O'Neill v. Long*, 54 P.3d 109, 114 (Okla. 2002). "Such language must be so clear, however, as to create no ambiguity that might affect the insured's reasonable expectations." *Contoocook Valley Sch. Dist. v. Graphic Arts Mut. Ins. Co.*, 147 N.H. 392, 393 (2001). "In determining whether an ambiguity exists, we look to the claimed ambiguity, consider it in its appropriate context, and construe the words used according to their plain, ordinary, and popular definitions." *Curtis*, 132 N.H. at 342 (ellipsis omitted). Policy terms create an ambiguity when the parties may reasonably differ about the interpretation of the language. *Contoocook Valley Sch. Dist.*, 147 N.H. at 393-94. Ultimately, we interpret exclusion language to mean "what a reasonable person would construe it to mean." *Curtis*, 132 N.H. at 341. The insurer asserting an exclusion of coverage, Concord General in this case, bears the burden of proving that the exclusion applies. *See id.* at 340. Given these parameters, we examine the language of the contested entitlement exclusion in this case.

██ The Concord General policy excludes coverage for an insured who uses an insured vehicle without "a reasonable belief" that he is "entitled to do so." The term "reasonable belief" requires both that the driver have a subjective belief that he is "entitled" to use the car and that such belief is objectively sound. *See Omaha Prop. & Cas. Ins. Co. v. Peterson*, 865 S.W.2d 789, 790 (Mo. Ct. App. 1993); *General Accident v. Perry*, 541 A.2d 1340, 1350 (Md. App. 1988). The term "entitled" is not defined in the policy.

When disputed terms are not defined in the policy, we construe them objectively, in context, and in light of what a more than casual reading of the policy would reveal to an ordinarily intelligent insured. *Weeks v. St. Paul Fire & Marine Ins. Co.*, 140 N.H. 641, 644 (1996). Dictionary definitions may be used in the interpretive process and "are of some value . . . to the extent they inform us of the common understanding of terms." *Hudson v. Farm Family Mut. Ins. Co.*, 142 N.H. 144, 147 (1997).

■ The term "entitle" commonly means, "to give a right or legal title to: qualify (one) for something: furnish with proper grounds for seeking or claiming something." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 758 (unabridged ed. 2002). Our laws governing motor vehicles prohibit any person from driving any motor vehicle upon the ways of this State without a valid driver's license. RSA 263:1 (2004). Our laws also prohibit any person from knowingly permitting "a motor vehicle owned or controlled by him to be driven by a person who is not properly licensed or otherwise entitled to drive." RSA 263:1-a (2004); *see also* RSA 263:14 (Supp. 2004) (provision concerning youth operator's license); RSA 263:25 (2004) (provision creating exception for persons learning to drive). Thus, in the context of operating a motor vehicle, consent of the owner or apparent owner of the vehicle, standing alone, is not sufficient for a person to reasonably believe he is entitled to drive a vehicle upon the public ways when that person knows he lacks a valid driver's license. *See Huggins v. Bohman*, 578 N.W.2d 326, 329 (Mich. Ct. App. 1998).

■ We acknowledge that a split exists among the jurisdictions concerning whether entitlement exclusions are ambiguous, or otherwise operate to bar coverage, when the driver lacks a valid driver's license. *Compare, e.g., Farm and City Ins. Co. v. Gilmore*, 539 N.W.2d 154, 157 (Iowa 1995) (entitlement exclusion ambiguous regarding whether unlicensed driver can reasonably believe entitled to use car) *and Safeco Ins. Co. of America v. Davis*, 721 P.2d 550, 552-53 (Wash. 1986) (same) *with Century Nat. Ins. Co. v. Tracy*, 789 N.E.2d 833, 836 (Ill. 2003) (entitlement exclusion bars coverage for unlicensed drivers) *and Huggins*, 578 N.W.2d at 329 (entitlement exclusion not ambiguous and excludes driver who lacks valid driver's license). On the facts of this case, we conclude that the entitlement exclusion is not ambiguous in its application, and that Heath could not as a matter of law have had a reasonable belief that he was entitled to drive the car when he knew he did not have a valid driver's license, despite any permission extended to him by his girlfriend.

Progressive identifies numerous circumstances where it argues "an insured may operate a motor vehicle 'illegally' without negating that person's reasonable belief that he or she is entitled to operate it, at least with respect to a reasonable expectation of liability coverage," including operating a vehicle while under the influence of alcohol, RSA 265:82 (2004), operating an uninspected vehicle, RSA 266:5 (2004), or driving a vehicle with an unrestrained minor, RSA 265:107-a (2004). Progressive contends that "[i]llegality of itself, therefore, cannot be used to defeat the reasonableness of a person['s] belief that he or she is entitled to operate a vehicle." We, however, limit our holding to the undisputed facts of this case, and do not resolve the myriad of circumstances in which a driver with a valid driver's license otherwise illegally operates a motor vehicle upon a public way.

We also are unpersuaded by Progressive's argument that we should interpret the entitlement exclusion in favor of coverage because Concord General used the term "unlicensed drivers" in other sections of its policy, but failed to use it in the entitlement exclusion. Although specific reference to unlicensed drivers in the entitlement exclusion might have prevented the present dispute, its omission does not alter the clear meaning of the term "entitled" in the context of this case. Accordingly, we affirm the trial court's grant of summary judgment in Concord General's favor on the entitlement exclusion.

## II

We next address whether the trial court erred in ruling that Concord General is obligated to provide protection under the Financial Responsibility Act. The relevant provision of the Act provides:

> The insurance applies to any person who has obtained possession or control of the vehicle of the insured with his express or implied consent even though the use in the course of which liability to pay damages arises has been expressly or impliedly forbidden by the insured or is otherwise unauthorized. This provision, however, shall not apply to the use of a vehicle converted with the intent to wrongfully deprive the owner of his property therein.

RSA 264:18, VI. Concord General disputes the trial court's ruling that because Brown had given Heath implied consent to drive the car, Heath had "possession or control" of the insured vehicle for purposes of the Financial Responsibility Act.

■ Many States, like ours, have enacted statutes requiring that insurers extend liability coverage to persons who use an insured vehicle with the insured's permission. *See, e.g., State Farm Mut. Ins. v. AMCO Ins. Co.,* 621 N.W.2d 553, 560 (Neb. Ct. App. 2001); *United Services Auto. v. Nat. Farmers,* 891 P.2d 538, 540 (N.M. 1995); *O'Neill,* 54 P.3d at 113. This type of coverage is commonly referred to as omnibus coverage. *See St. Paul Fire & Marine Ins. Co. v. Guthrie,* 773 N.E.2d 763, 765 (Ill. App. Ct. 2002). An omnibus clause, "in effect, protects third parties wrongfully injured by the use of the insured vehicle by persons other than the owner." *O'Neill,* 54 P.3d at 113. Indeed, the "paramount purpose" of our Financial Responsibility Act is "to provide compensation to persons harmed by the negligent operation of motor vehicles." *Peerless Ins. Co. v. Vigue,* 115 N.H. 492, 494 (1975).

Courts around the country have adopted different standards, varying in the degree of restriction, in considering whether an omnibus clause extends statutory liability coverage to a permissive driver who exceeds the scope of consent initially granted by the named insured. The three most common standards are: "(1) the strict or conversion rule; (2) the minor deviation rule; and (3) the liberal or initial permission rule." *State Farm Mut. Auto. Ins. Co. v. Ragatz,* 571 N.W.2d 155, 159 (S.D. 1997). New Hampshire has adopted the latter "initial permission" rules. *See Gov't Empl. Ins. Co. v. Johnson,* 118 N.H. 899, 903 (1978) *(GEICO).*

Under the strict or conversion rule, "once initial permission is given by the owner of a vehicle to a permittee, the permittee must conform to the time, place and uses specified or intended by the parties as of the time of granting such permission." *Id.* "[T]he slightest deviation from the time, place and use restrictions will preclude coverage under the omnibus clause." *Id.* The minor deviation rule is more forgiving. Under the rule, "once permission is conferred, the protection afforded by the omnibus clause will not terminate unless the permittee commits a material violation [of] or deviation from the terms of the permission conferred or contemplated at the time permission was given in the first instance." *Id.* at 160. Under this intermediate approach, courts determine whether the deviation was minor or material, considering "the extent of deviation in actual distance or time, the purpose for which the vehicle was given, and other factors." *Id.* (quotations omitted). "A deviation is material if it is alien or foreign to the original permitted objective or operation." *Id.* (quotations omitted).

■ Under the "initial permission" or, as some authorities have described it, the "hell or high water" rule, *see Barry v. Tanner*, 547 N.W.2d 730, 733 (Neb. 1996), "once permission to use [an insured] vehicle is given in the first instance, any subsequent deviation is wholly immaterial and will not defeat coverage under an omnibus clause," *Ragatz*, 571 N.W.2d at 159. Coverage is defeated only where "the deviation from the permitted use rises to the level of theft or conversion." *Wiglesworth v. Farmers Ins. Exchange*, 917 P.2d 288, 291 (Colo. 1996). This liberal approach is based upon the following policy considerations: "(1) it effectively furthers the state's policy of compensating and protecting innocent accident victims from financial disaster, (2) the rule serves to discourage collusion between lender and lendee in order to escape liability, and (3) the rule greatly reduces a most costly type of litigation." *Manzella v. Doe*, 664 So. 2d 398, 402 (La. 1995) (quotations and brackets omitted).

Even among these three most common standards, however, jurisdictions have developed varying criteria for determining whether omnibus coverage extends to a permissive driver when the use failed to adhere to the named insured's express limitations. *See, e.g., Nationwide Mut. Ins. Co. v. Dunning*, 252 F.3d 712, 717 (5th Cir. 2001) (under Mississippi law, standard for determining coverage for permissive use varies generally depending upon whether named insured granted restricted or unrestricted use); *Ragatz*, 571 N.W.2d at 159 n.3 (outlining varying criteria that jurisdictions consider regarding whether second permittee has implied consent to use car despite named insured prohibition of third party use).

In *GEICO*, we applied the "initial permission" rule to circumstances similar to the facts in the case before us to determine whether the insurer was obligated to provide liability coverage under a former version of the omnibus clause. *See GEICO*, 118 N.H. at 901-02 (decided under former RSA 268:16, VI). A father went on vacation and left his sixteen-year-old son at home with permission to use his car. The father told his son not to allow anyone else to drive the car. One evening, the son invited some friends to his home, where they all consumed alcohol. The son permitted his friend to use his father's car. Tragically, the friend crashed the car into a tree, and both occupants were killed.

Because the father had not provided express consent for his son's friend to use the car, we considered whether "[c]onsent [could] be implied from the totality of circumstances surrounding a given use of [an insured] vehicle." *GEICO*, 118 N.H. at 902. Despite the father's admonition to his son not to allow anyone to use his car, we concluded that the son's friend, as a second or subsequent permittee, gained "possession or control" over

the insured vehicle with the implied consent of the father as the named insured or owner of the car because

> [t]o all appearances, [the son] had possession and full control of his parents' home and automobile while they were out of town[;] [the friend] had good reason to believe that he was using the vehicle with the permission of a person authorized to give consent[; and, the friend] had no way of knowing of the instructions from [the father] restricting that authority.

*Id.* (citation omitted). In essence, we held that a subsequent permittee obtains possession or control over an insured vehicle with the implied consent of the named insured or owner of the vehicle when an initial permittee, with apparent authority to authorize consent to use the car, allows that subsequent permittee to use the car, and that subsequent permittee has no way of knowing that the named insured or car's owner restricted the initial permittee's authority to allow others to use the car. *Id.* at 902, 903; *see also Raitz v. State Farm Mut. Auto. Ins. Co.*, 960 P.2d 1179, 1184 (Colo. 1998) (agreeing with courts following initial permission rule that extend omnibus coverage to subsequent permittee even when named insured expressly prohibited initial permittee from allowing third party use of car). Further, we determined whether the subsequent permittee, *i.e.*, the driver, possessed or controlled the insured vehicle with the implied consent of the owner or named insured from the standpoint of the subsequent permittee. *See GEICO*, 118 N.H. at 902. *Compare Metropolitan v. Hertz Corp.*, 981 P.2d 1091, 1094 (Colo. 1999) (implied permission considered from perspective of subsequent permittee and exists as long as permittee does not know named insured prohibited third party use), *with Wade v. Autoland, Inc.*, 767 So. 2d 766, 770 (La. Ct. App. 2000) (implied permission depends upon whether named insured could reasonably foresee that initial permittee would allow third party to use car).

■ We conclude, as have other courts, that the liberal approach to omnibus coverage under the "initial permission" rule best preserves the legislature's goal of protecting accident victims from financial hardship. *See, e.g., St. Paul Fire & Marine Ins. Co.*, 773 N.E.2d at 765; *State Farm Mut. Ins. Cos.*, 621 N.W.2d at 560; *O'Neill*, 54 P.3d at 113-14; *Milbank Mut. Ins. Co. v. U.S. Fidelity and Guar. Co.*, 332 N.W.2d 160, 166 (Minn. 1983). The "initial permission" rule also reduces the need for factual inquiries regarding the scope of permission and the extent of deviation

from that scope, which would proliferate litigation in this area. *See Wiglesworth*, 917 P.2d at 291; *Barry*, 547 N.W.2d at 733. We favor a standard that provides efficiency and finality in the adjudicative process, especially where the protection of accident victims is the primary concern of the statutory scheme.

In the case before us, Concord General disputes the trial court's ruling that Heath thought Brown owned the car, and thus obtained possession or control of the insured vehicle through her consent. Concord General additionally argues that the evidence shows Heath knew both that the step-father owned the car and that the step-father would not have allowed him to use the car had he asked. Thus, according to Concord General, whether Brown gave Heath permission to use the car is "irrelevant because she is not the owner insured" and Heath "knew that the owner [Chestnut] of the vehicle would not let him drive [the car]." Progressive contends that the dispositive factor in this case is "that Heath clearly believed that Brown had authority to give him permission—whether or not Chestnut would have agreed, if he had been asked."

The trial court concluded that "Brown had given Heath implied consent to drive" the insured vehicle, and thus, following *GEICO*, it ruled "Heath had possession and control of the motor vehicle with the implied consent of the owner for purposes of the Financial Responsibility Law." The court based its ruling upon the following conclusions it drew from the summary judgment record:

> Brown considered herself the true owner of the car since she made payments on the vehicle and paid the insurance. Heath also thought the vehicle belonged to his girlfriend, who was in the vehicle with him at the time of the accident. Brown had Heath drive because she was tired and thought it would be safer for him to drive. Even if she did not expressly tell him that he could drive, her presence in the car with him clearly implies consent. This Court holds that Heath drove the car with the implied consent of Brown.

(Citations omitted.) After reviewing the record *de novo*, we conclude that the trial court's reasoning contains several material errors and that genuine issues of material fact exist on the record precluding a grant of summary judgment.

■ First, the trial court relied upon Brown's belief that she was the owner of the car. For omnibus coverage under the Act to apply, however,

"the person operating the vehicle must have the express or implied consent of the named insured or owner of the [insured] vehicle." *GEICO*, 118 N.H. at 902. Because consent must be given from the actual owner or named insured, Brown's belief that she was the owner of the vehicle is irrelevant. Second, the trial court stated that Heath also believed Brown was the owner of the car. While Heath's subjective belief may inform whether he thought she had the authority to grant him consent to drive, the record is inconsistent as to which person Heath believed was the owner of the car. In his statement to the police, Heath stated that he was driving his "girlfriend's dad's car." During his deposition, Heath again referred to Chestnut as the owner of the car, but also stated that he thought Brown was "the owner of the car [on] that day."

We are also troubled by the trial court's failure to address Heath's statements during his deposition that while he never asked Chestnut for his permission to use the vehicle, he did not "think that [Chestnut] would [have given Heath] his permission, if [Heath had] asked him to use the vehicle." Heath's belief may simply amount to reflective speculation. *See State Farm Mut. Ins. Co.*, 621 N.W.2d at 565 (implied permission depends upon what was actually said and done prior to accident). His belief may, however, reflect that at the time he operated the insured vehicle, he did not subjectively believe that Brown had the authority to grant him permission to use the car, or even perhaps that he had reason to know of Chestnut's prohibition on third party use of the car. *Compare GEICO*, 118 N.H. at 902 (subsequent permittee had no way of knowing of owner's admonition to initial permittee not to allow anyone else to use insured vehicle) *with Raitz*, 960 P.2d at 1186 (no omnibus coverage for persons who use vehicle with knowledge that named insured has prohibited third party use) *and Dairyland Ins. Co. v. General Acc. Ins. Co.*, 435 So. 2d 1263, 1264 (Ala. 1983) (no coverage when subsequent permittee knew that insured's permission was limited to initial permittee). Heath's averment during his deposition that Chestnut never spoke with him about the insured vehicle only dispels Chestnut himself as the source of Heath's potential knowledge of his admonition. We also note that Brown's undisputed status as the primary operator of the car and the apparent fact that Heath drove the car on occasions prior to the accident may also shed light on whether Heath actually and reasonably believed Brown had authority to grant him use of the car on the day of the accident.

After viewing the facts and inferences in the light most favorable to Concord General as the non-moving party, we conclude that genuine issues

of material fact exist in the record regarding: (1) Heath's belief that Brown had apparent authority to grant him consent to use the vehicle; and (2) Heath's knowledge of Chestnut's admonition regarding third party use of the car. *Cf. Metropolitan*, 981 P.2d at 1094 (subsequent permittee had implied permission to use insured vehicle because no suggestion from evidence that he knew he was prohibited from using vehicle). Therefore, on the record before us we conclude that summary judgment on the omnibus clause of the Financial Responsibility Act should not have been granted.

In sum, we affirm the trial court's grant of summary judgment in favor of Concord General on the entitlement exclusion under its policy, we vacate the trial court's grant of summary judgment in favor of Progressive on the omnibus clause under the Financial Responsibility Act, and remand.

*Affirmed in part; vacated in part; and remanded.*

NADEAU, DALIANIS, DUGGAN and GALWAY, JJ., concurred.